

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0446-13

**RICARDO JOURDAN, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY**

**PRICE, J., delivered the opinion of the opinion for a unanimous Court.**

## O P I N I O N

The appellant was convicted of the offense of aggravated sexual assault, for which the

jury assessed a sentence of thirty-five years in the penitentiary. The Dallas Court of Appeals

reversed his conviction, however, holding that the appellant was egregiously harmed by a

jury charge at the guilt phase of trial that failed to require the jury to render a unanimous

verdict with respect to which of two theories of aggravated sexual assault the appellant's

conduct satisfied.[1]  We granted the State's petition for discretionary review in order to

address the court of appeals's conclusions both that the jury charge was erroneous and that

any such error was egregiously harmful.  We reverse.

## FACTS AND PROCEDURAL POSTURE

### Indictment, Voir Dire, and Jury Charge

In order to fully address the issues in this case, it is useful to set out the language of

the indictment *in haec verba*.  It begins:[2]

> On or about the 23rd day of September A.D., 2010 in the County of Dallas and
> . . . State [of Texas, the appellant] did unlawfully then and there intentionally
> and knowingly cause contact and penetration of the female sexual organ of
> CRYSTAL KEMP,[3] hereinafter called the complainant, without the consent

---

[1]

*Jourdan v. State*, No. 05-11-01488-CR, 2013 WL 4859533, at *5-8 (Tex. App.—Dallas Feb. 12, 2013) (not designated for publication).

[2]

On its face, the indictment simply sets out two discrete paragraphs, without formally designating them as separate "paragraphs" or "counts."  Because the State ultimately sought only one conviction based upon the indictment, and the jury was authorized to return only one conviction, albeit based upon either of the two allegations, we will presume that the two discrete paragraphs were meant to constitute two "paragraphs" within a single "count," intended to allege alternative ways of committing a single actionable offense.  *See Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) ("When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate 'count.'  TEX. CODE CRIM. PROC., Art. 21.24(a). Then separate 'paragraphs' within a single count may allege different methods of committing the same offense.  Art. 21.24(b).  But since each 'count' alleges a single offense, an indictment cannot authorize more convictions than there are counts."); George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 25:210, at 345 (3d ed. 2011) (separate paragraphs in a single count constitute alternative allegations for the commission of the same offense, "and the State ultimately seeks only one conviction on the count for the offense committed in one way").  By this understanding, what follows in the text is the first paragraph of the one count indictment.

[3]

"Crystal Kemp" is a pseudonym for the victim, as authorized by Article 57.02 of the Code of

of the complainant, by means of an object, to-wit: the sexual organ of [the appellant], and, by acts and words, [the appellant] did place the complainant in fear that death and serious bodily injury would be imminently inflicted on CRYSTAL KEMP[.][4]

The indictment then continues with a second paragraph:

and further, [the appellant] did unlawfully then and there intentionally and knowingly cause penetration of the female sexual organ of CRYSTAL KEMP, hereinafter called the complainant, without the consent of the complainant, by means of an object, to-wit: the finger of [the appellant], and by acts and words, [the appellant] did place the complainant in fear that death and serious bodily injury would be imminently inflicted on CRYSTAL KEMP[.][5]

Thus, the indictment alternatively charged the appellant with: (1) causing Kemp's female

---

Criminal Procedure. TEX. CODE CRIM. PROC. art. 57.02(b); *Stevens v. State*, 891 S.W.2d 649, 651 (Tex. Crim. App. 1995).

[4]

To the extent that this paragraph alleges that the appellant caused *penetration* of the complainant's sexual organ with his own, it plainly alleges sexual assault under Section 22.021(a)(1)(A)(i) of the Penal Code. *See* TEX. PENAL CODE § 22.021(a)(1)(A)(i) ("A person commits an offense . . . if the person . . . intentionally or knowingly . . . causes the penetration of the . . . sexual organ of another person by any means, without that person's consent[.]"). To the extent that it alleges that the appellant caused *contact* between his own sexual organ and that of the complainant, it seems also to allege sexual assault under Section 22.021(a)(1)(A)(iii). *See* TEX. PENAL CODE § 22.021(a)(1)(A)(iii) ("A person commits an offense . . . if the person . . . intentionally or knowingly . . . causes the sexual organ of another person, without that person's consent, to contact . . . the . . . sexual organ of another person, including the actor[.]"). The theory of aggravation is the one contained in Section 22.021(a)(2)(A)(ii). *See* TEX. PENAL CODE § 22.021(a)(2)(A)(ii) ("if . . . the person . . . by acts or words places the victim in fear . . . that death [or] serious bodily injury . . . will be imminently inflicted on any person").

Incidentally, both this paragraph and the one that follows also alleged an alternative aggravating theory under Section 22.021(a)(2)(A)(iii). TEX. PENAL CODE § 22.021(a)(2)(A)(iii). However, prior to trial, the State abandoned this clause from each paragraph, with the appellant's assent.

[5]

This paragraph plainly alleges aggravated sexual assault under Section 22.021(a)(1)(A)(i) of the Penal Code. TEX. PENAL CODE § 22.021(a)(1)(A)(i).

sexual organ to contact his own sexual organ (Indictment Paragraph 1) (Section 22.021(a)(1)(A)(iii)); (2) causing penetration of Kemp's female sexual organ with his own sexual organ (Indictment Paragraph 1) (Section 22.021(a)(1)(A)(i)); and (3) causing penetration of Kemp's female sexual organ with the appellant's finger (Indictment Paragraph 2) (also Section 22.021(a)(1)(A)(i)).

During voir dire, the prosecutor read both paragraphs of the indictment out loud to the jury panel and then asked, "Anybody catch the difference between the two of them?" He explained:

> It was either the sexual organ of the offender or the finger of the offender. Sexual organ of the defendant caused contact and penetration. You're going to learn that's going to be "or." It can be either contact or penetration. The finger has to penetrate the female sexual organ. With regards to the penis, the penis has to contact or penetrate the sexual organ. It's kind of confusing. I kind of broke it down so you'll see it this way, and it'll be easier to understand.

> Two ways to prove this charge. If it's the sexual organ, it can be contact and penetration. But that's going to be an "or," you're going to learn. And the finger, it's just penetration.

After some dialogue with various veniremembers, the prosecutor summed up:

> Okay. I think you-guys understand it then. That's the difference. To be blunt, the penis can either contact or penetrate the sexual organ; the fingers have to penetrate.

> Either/or they are punishable by the same amount. We can prove either/or. It's going to be based on the evidence. You're going to go back there and six of you may say I think the State proved its case beyond a reasonable doubt in the first part; six of y'all may say I think they proved it in the second part. The deal is, it's got to be either/or.

Later, the prosecutor asked whether there were any questions before he turned to a discussion

of punishment issues, and the following colloquy ensued:

> THE VENIREPERSON:  To me there is like four parts there.  Do all four parts have to be proved?

> [THE PROSECUTOR]:  What do you mean?

> THE VENIREPERSON: Well, the sexual organ with contact and penetration.  And there is the finger with -- are those two separate or are they both together?

> [THE PROSECUTOR]:  Remember I said there are going to be two theories of the indictment and it allows either/or?  See how on this first one, to-wit: the sexual organ of said defendant.  So that relates to the first part; sexual organ.  And it's contact or penetration.  You see that; knowingly cause contact and penetration?

> THE VENIREPERSON:  Yes.

> [THE PROSECUTOR]:  Then you go to the second one where we're talking about the finger of said defendant.  And it just talks about penetration with regards to the finger.

> THE VENIREPERSON:  And what I'm asking is, do both points need to be proved within reasonable doubt?

> [THE PROSECUTOR]:  No.  We have to prove one or the other.

> THE VENIREPERSON:  I gotcha (sic).

> [THE PROSECUTOR]:  And that will be given to you at the end.  You're going to have two separate application paragraphs where it's either the sexual organ of the defendant or the finger of said defendant.  If it is the sexual organ of the defendant, it would be contact or penetration.  If it's the finger, it has to be penetration, beyond a reasonable doubt.

But in fact, the jury charge at the guilt phase of trial contained only one application

paragraph, not two as the prosecutor had predicted during voir dire. That application

paragraph, to which the appellant made no jury unanimity objection,[6] read:

> If you find and believe from the evidence beyond a reasonable doubt that the defendant, Ricardo Jourdan, on or about September 23rd, 2010, in Dallas County, Texas, did unlawfully then and there intentionally or knowingly cause contact or penetration of the female sexual organ of Crystal Kemp, hereinafter called the complainant, without the consent of the complainant, by means of an object, to-wit: the sexual organ of said defendant and, by acts or words, said defendant did place the complainant in fear that death or serious bodily injury would be imminently inflicted on Crystal Kemp, or defendant did unlawfully then and there intentionally or knowingly cause penetration of the female sexual organ of Crystal Kemp, hereinafter called the complainant, without the consent of the complainant, by means of an object, to-wit: the finger of the said defendant, and, by acts or words, said defendant did place the complainant in fear that death or serious bodily injury would be imminently inflicted on Crystal Kemp, you will find the defendant guilty of aggravated sexual assault, as charged in the indictment. If you do not so find or if you have a reasonable doubt thereof, you will find the defendant not guilty.

This application paragraph does not expressly require the jury, as a predicate to convicting

the appellant, to reach agreement with respect to whether he: (1) contacted Kemp's sexual

organ with his own sexual organ (Section 22.021(a)(1)(A)(iii)); (2) penetrated Kemp's sexual

organ with his own sexual organ (Section 22.021(a)(1)(A)(i)); or (3) penetrated Kemp's

sexual organ with his finger (also Section 22.021(a)(1)(A)(i)).

---

[6] The appellant did object to inclusion of the finger-penetration theory in the application paragraph, contending that the evidence at trial was insufficient to support submitting that theory to the jury. But he failed to object that the application paragraph violated his right to jury unanimity in that it did not require jury agreement with respect to the particular theory of contact/penetration upon which it would rely to convict.

**The Evidence**

A native of El Salvador, Crystal Kemp was employed cleaning public libraries in Dallas. At about 8:30 on the morning of September 23, 2010, she had just finished cleaning one branch library and was about to depart for another when she discovered that she had locked her keys in her car. She called her sister-in-law, Alma Giron, on her cell phone for help. As she was talking to Giron on the phone, the appellant approached her to offer assistance. Speaking very little English, Kemp handed her phone to the appellant to talk to Giron, who explained Kemp's plight. The appellant offered to help Kemp retrieve her keys, but asked her to fetch him paper towels from inside the library. The appellant then followed Kemp into the bathroom of the library, where, according to Kemp's testimony, he sexually assaulted and brutally beat her.

Through an interpreter, Kemp testified that the appellant threw her to the floor of the bathroom and took her clothes off. He then began to beat her, first "punching" her in the face, and then kicking and stomping her. The appellant then took his own pants and underwear off.

Q. What happened after that?

A. Then when he saw that his penis was not hard, he did like this with his hand trying to get it hard.

Q. And was that -- for the record, did he masturbate?

A. Yes.

Q. So you said that he put his penis inside your vagina?

A. Yes.

Q. And his penis -- so his penis contacted and penetrated your vagina?

A. Yes.

Q. Then you said that he wasn't fully erect?

A. Yes.

Q. And so when he masturbated, where was he?

A. He was sitting down.

Q. Was he right next to you?

A. Yes, he was next to me. He was kind of like in a crouching position, and he was doing like this to his penis.

Q. He was masturbating.

A. Yes.

Q. And then did he get back on top of you?

A. Yes. He got on top of me again. His penis in his hand, like this.

Q. And did he penetrate you again?

A. That I don't know, because at that point he hit me with a blow when I was asking him not to do it.

Q. Do you think you lost consciousness at any point?

A. Yes.

Kemp did not expressly testify that the appellant penetrated her with his finger.

Other testimony did suggest, however, that the appellant penetrated Kemp's sexual organ with a finger or fingers. The physician who examined Kemp when she was taken to the emergency room testified that she told him that the appellant had penetrated her with his "[d]igits" or "[f]ingers." His written summary of his interview with Kemp even included the notation: "No actual penis penetration; could not get hard." But the hospital employee who served as an interpreter for the doctor testified that Kemp told the doctor that the appellant had "penetrated her with the aid of his fingers because he was not able to keep his erection." He agreed with the prosecutor that Kemp told them that the appellant had penetrated her vagina with "both" his penis and his fingers.

A forensic biologist from Southwestern Institute of Forensic Sciences detected seminal fluid on Kemp's shirt and on her perineum—"the area between the genital area and the anus"—but not in her vagina. Testing revealed that DNA in the seminal fluid matched the appellant's.

Testifying on his own behalf, the appellant admitted that he had beaten Kemp in the bathroom of the library, but he denied sexually assaulting her in any way. He denied that he ever removed Kemp's pants or that his semen "would have gotten on her vagina." According to the appellant's account, Giron actually came to the library parking lot and persuaded Kemp to offer the appellant oral sex in exchange for fifty dollars and his help in retrieving the car keys. The appellant and Kemp entered a storage shed on the premises, but the appellant ejaculated on Kemp's shirt before she could even initiate the act agreed upon. Angry that

Kemp would not remit at least a portion of his fifty dollars, the appellant followed her into the bathroom of the library where he lost his temper and beat her up. But he emphatically denied having had "any kind of sex with her there in the bathroom[.]" Had the jury credited the appellant's account, it could not have rationally convicted him of aggravated sexual assault—under any of the theories alleged in the indictment.

**Jury Argument**

In final argument at the guilt phase, the prosecutor harkened back to his earlier assertions during voir dire with respect to jury agreement:

> I also talked to you [during voir dire] about contact and penetration and fingers and things like that. So now you know why we talk about this, and now you know why I spent a majority of my time discussing the elements. It was so you 12 citizens have a clear idea of what you're about to take part in.
>
> What I want to show you is page 3 of the charge. We talked in voir dire about whether it could be one of two ways, whether it could be the penis or the fingers.
>
> On page 3, the application paragraph, it lays it out perfectly. If you'll notice, did unlawfully then and there knowingly cause contact -- which is the first way -- or penetration of the female sexual organ of Crystal Kemp.
>
> Penetration, the second way; hereinafter called the complainant, without the consent of the complainant, to-wit: sexual organ of the defendant. Sexual organ.
>
> The third way -- and I talked to you about how in the application paragraph when we were talking in voir dire, you'll see the defendant caused penetration of the sexual organ of Crystal Kemp. And I'm going to go down -- to-wit: the finger of said defendant.
>
> So I just wanted to make it clear for you. Everybody could say, you

know what, I think the State proved it because the penis contacted the sexual organ. Another four of you could say, I think the penis penetrated the sexual organ of this victim. Another four could say, I know it was the fingers that penetrated the complainant's sexual organ.

Subsequently, the prosecutors urged the jury at several points during the balance of their arguments to reject the appellant's version, in which he denied that any sexual assault took place, on the ground that the appellant was unable to explain how, if Kemp's pants were never removed, his semen could nevertheless have been deposited on her perineum. The jury convicted the appellant of aggravated sexual assault "as charged in the indictment."

## On Appeal

For the first time on appeal, the appellant argued that the trial court committed error by allowing the jury to convict him without attaining unanimity with respect to what he perceived to be two theories of aggravated sexual assault reflected in the indictment: (1) aggravated sexual assault by means of contact/penetration of Kemp's sexual organ with his own sexual organ (Indictment Paragraph 1); and (2) penetration of Kemp's sexual organ with his finger (Indictment Paragraph 2). He argued that the two paragraphs alleged separate offenses, not merely alternative manner and means of committing the same offense. Because that error caused him egregious harm, he maintained, his conviction should be reversed under *Almanza v. State*.[7]

---

[7] 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on State's motion for reh'g); *see also Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("Because Cosio forfeited his constitution-based jury charge claim [predicated on jury unanimity], he is not entitled to a harm analysis under [TEX. R. APP. P.] Rule 44.2(a). But the charge error must still be reviewed for

In addressing this contention, the court of appeals began its analysis by determining that the first paragraph of the indictment charged the appellant with aggravated sexual assault under Section 22.021(a)(1)(A)(iii).[8] The court of appeals next determined that the second paragraph, by contrast, charged the appellant with aggravated sexual assault under Section 22.021(a)(1)(A)(i).[9] Based upon these determinations, and on authority of this Court's holding in *Vick v. State*,[10] the court of appeals concluded that the indictment alleged two separate statutorily defined offenses, and held that the jury should have been required to achieve unanimity with respect to at least one of those offenses before convicting.[11] Particularly in view of the prosecutor's emphasis during his final argument that the jury need not agree on which theory of the offense the appellant had committed, the court of appeals concluded that the jury charge error caused the appellant egregious harm.[12]

We granted the State's petition for discretionary review in order to address two contentions. First, the State contends that the court of appeals was mistaken to hold that the

---

egregious harm under *Almanza*.").

[8] *Jourdan*, 2013 WL 4859533, at *6.

[9] *Id*.

[10] 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999).

[11] *Jourdan*, 2013 WL 4859533, at *6-7.

[12] *Id*. at *8.

first paragraph of the indictment alleged aggravated sexual assault under Section 22.021(a)(1)(A)(iii). In the State's view, the two paragraphs simply alleged different manner and means by which the appellant committed aggravated sexual assault under the same subsection of the statute, Section 22.021(a)(1)(A)(i)—that is to say, both paragraphs alleged that the appellant penetrated Kemp's sexual organ, but by different means, *viz.*: by his own sexual organ and by his finger. Because the Legislature is indifferent with respect to the specific means by which such penetration occurs, the State maintains, the court of appeals erred to hold that the penetration by the appellant's sexual organ and penetration by his finger constituted discrete offenses for purposes of the jury unanimity requirement. Second, and alternatively, the State contends that the court of appeals erred to focus so heavily on the prosecutor's final argument in concluding that any error in the jury charge caused the appellant egregious harm and that, on the facts of this case there is no reasonable chance that the jury failed to reach unanimity with respect to at least one of the alleged theories.

## ANALYSIS

Under state law, the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases.[13] But the requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various

---

[13] *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007).

alternative manner and means of committing the same statutorily defined offense.[14]

"Therefore, different modes of commission may be presented in a jury instruction in the disjunctive when the charging instrument, in a single count, alleged the different means in the conjunctive."[15]

In this case, we can identify at least three potential jury unanimity problems with the jury charge. It authorized the jury to convict the applicant without discriminating whether he:

1.  *contacted* Kemp's sexual organ with his own sexual organ versus *penetrated* her sexual organ with his own;

2.  penetrated Kemp's sexual organ with his own *sexual organ* versus penetrated her sexual organ with his *finger*; or

3.  *contacted* Kemp's sexual organ with his own *sexual organ* versus *penetrated* her sexual organ with his *finger*.

The only argument that the appellant made on appeal was that jury agreement was required with respect to the second of these scenarios—whether the appellant penetrated Kemp with his own sexual organ or, instead, with his finger. He did not raise the first and third scenarios. It was on the basis of the second scenario that the court of appeals reversed the appellant's conviction, holding that penetration by the appellant's sexual organ and penetration by his finger constituted separate offenses, requiring jury unanimity with respect

---

[14] *Id*. at 715.

[15] *Id*.

to one or the other.[16]   Because that was the basis for the court of appeals's ruling, we will

address that scenario first.

### 1.  Penile Penetration Versus Digital Penetration

The State insists that the first paragraph of the indictment actually charged an offense

under Section 22.021(a)(1)(A)(i) rather than, as the court of appeals concluded, Section

22.021(a)(1)(A)(iii).  Because the second paragraph also alleged an offense under Section

22.021(a)(1)(A)(i), the State maintains, the two paragraphs simply allege alternative manner

and means of committing the same statutorily defined offense—two ways of causing the

penetration of Kemp's sexual organ.  Thus, the State concludes, the court of appeals erred

to rely upon this Court's opinion in *Vick* to conclude that the two paragraphs charge discrete

statutory offenses, requiring jury unanimity.

We think the State is partly correct.  Removing the reference to "contact" from the

first paragraph of the indictment, it would constitute a pure allegation, under Section

22.021(a)(1)(A)(i), that the appellant penetrated Kemp's sexual organ with his own sexual

organ.  In that event, the question would boil down to whether the State is correct that

alleging two ways in which that penetration was accomplished (by the appellant's sexual

organ, in Paragraph 1; by his finger, in Paragraph 2) constitutes but two alternative ways of

alleging the same offense under Section 22.021(a)(1)(A)(i), thus creating no jury unanimity

---

[16]

    *See Jourdan*, 2013 WL 4859533, at *7 ("The trial court instructed the jury in the disjunctive allowing it to find appellant guilty if they believed he either penetrated her sexual organ with his sexual organ of if he penetrated her sexual organ with his finger.").

requirement. We agree with the State that the first paragraph of the indictment *does* allege an offense under Section 22.021(a)(1)(A)(i), and that, to that extent, it alleges the same statutorily defined offense as the second paragraph, albeit a different manner and means.

In *Vick*, we held that allegations of aggravated sexual assault under different subsections of Section 22.021(a)(1)(B) of the Penal Code constituted discrete statutorily defined offenses, and that, for double jeopardy purposes, Vick could be prosecuted for both offenses even though he had committed those discrete offenses (as did the appellant in this case) in the course of the same transaction.[17] Thus, we concluded that it was permissible for the State to prosecute him successively for aggravated sexual assault under both Section 22.021(a)(1)(B)(i) (causing the penetration of a child's sexual organ by his own) and Section 22.021(a)(1)(B)(iii) (causing the sexual organ of a child to contact his mouth).[18] The specificity reflected in the different subsections of the statute, we reasoned, "reflects the [L]egislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct."[19] Moreover, "the Legislature intended to punish separate acts, even though such acts might be in close temporal proximity; that is, the Legislature, through the

---

[17] 991 S.W.2d at 833.

[18] *Id*.

[19] *Id*.

language of the statute, has rejected grouping aggravated sexual assaults by 'transaction.'"[20]

Here, of course, unlike in *Vick*, the allegations of penile and digital penetration allege conduct that is proscribed by the *same* subsection of Section 22.021. That will not always make a difference. We have made clear that discretely proscribed conduct even within the same subsection of a penal statute may still serve to delineate separately actionable offenses for both double jeopardy and jury unanimity purposes when they are "specified within separate and disjunctive *phrases* in the *same* subsection."[21] But Section 22.021(a)(1)(A)(i) does not disjunctively specify different types of conduct, as was true of the various subsections of Section 22.021 that were at issue in *Vick*. Instead, Section 22.021(a)(1)(A)(i) simply proscribes the same type of conduct—"penetration" (albeit of more than one statutorily specified orifice)—perpetrated "by any means."

The number of discrete statutorily defined offenses that may be embraced within a single penal section is a function of legislative intent,[22] and in examining statutory language

---

[20] *Id*.

[21] *Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010) (citing *Haight v. State*, 137 S.W.3d 48, 50 (Tex. Crim. App. 2004), and, more importantly, a jury-unanimity case, *Pizzo v. State*, 235 S.W.3d at 718).

[22] *See Pizzo*, 235 S.W.3d at 714 ("To discern what a jury must be unanimous about, appellate courts examine the statute defining the offense to determine whether the Legislature 'creat[ed] multiple, separate offenses, or a single offense' with different methods or means of commission.") (quoting *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006)); *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) ("In deciding what elements and facts a jury must unanimously agree on, courts implement the legislative intent behind the penal provision.")

for legislative intent, we inquire into the "gravamen" of the offense.[23] Utilizing the so-called "eighth-grade grammar" test for discerning the gravamen of a given offense,[24] we note that Section 22.021(a)(1)(A)(i) supplies a noun ("person"), a main verb ("causes") and direct object ("penetration"), plus three adverbial phrases ("of the anus or sexual organ"/"of another person"/"by any means"). Ordinarily, we have not regarded adverbial phrases as "elemental" for jury unanimity purposes.[25] But here, the first two adverbial phrases provide a level of specificity that arguably serves to define discretely actionable units of prosecution even within the same statutory subsection. Accordingly, a defendant may be susceptible to prosecution under Section 22.021(a)(1)(A)(i) for as many "persons" as he penetrated during the same transaction, and for as many statutorily delineated orifices as the evidence may show he penetrated. The last adverbial phrase in the subsection, on the other hand, is non-specific, and we agree with the State that this signals a legislative indifference to how the penetrations may be accomplished. Thus defined, the gravamen of the subsection is penetration, not the various and unspecified "means" by which that penetration may be perpetrated, which are not elemental. We conclude that, in this case, the penetration of a single orifice (the sexual organ) of the one victim (Kemp) during the same transaction

---

[23] *See Pizzo*, 235 S.W.3d at 714 ("[I]t is necessary to identify the essential elements or gravamen of an offense and the alternate modes of commission, if any.").

[24] *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007); *Landrian*, 268 S.W.3d at 537.

[25] *Stuhler*, 218 S.W.3d at 718; *Pizzo*, 235 S.W.3d at 714-15.

constituted but one offense under Section 22.021(a)(1)(A)(i), regardless of the various manner and means by which the evidence may show that the penetration occurred. The jury was not required to reach unanimity with respect to whether the appellant penetrated Kemp with his penis or his finger during that transaction. The court of appeals erred to conclude otherwise.

## 2. Penile Contact Versus Penile Penetration

The court of appeals no doubt believed that the first paragraph (Indictment Paragraph 1) charged aggravated sexual assault under Section 22.021(a)(1)(A)(iii) because of the reference there to the appellant having caused *contact* with, not just penetration of, Kemp's sexual organ. It is certainly true that the first paragraph may be read to allege that the appellant caused her sexual organ to contact his own sexual organ, which would constitute a violation of Section 22.021(a)(1)(A)(iii). To the extent that the first paragraph thus seems to have alleged an offense under both Section 22.021(a)(1)(A)(i) *and* Section 22.021(a)(1)(A)(iii),[26] it presented the jury with the option of convicting the appellant of aggravated sexual assault if he caused the penetration of her sexual organ with his own sexual organ or, alternatively, if he caused her sexual organ to contact his own. Because

---

[26] The appellant has made no argument, at trial or even on appeal, that the first paragraph of the indictment should have been quashed for duplicity. *See* George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 25:207, at 337 (3d ed. 2011) ("Duplicity exists when one count charges two offenses constituting crimes under different statutory provisions."). We therefore have no occasion to address whether the indictment itself was flawed. TEX. CODE CRIM. PROC. art. 1.14(b).

these allegations involve distinct statutorily defined types of conduct ("penetration" versus "contact") that are proscribed by different subsections of the aggravated sexual assault statute, a substantial argument can be made that they constitute two offenses in contemplation of our holding in *Vick*.

But the appellant did not make this argument in the court of appeals. Even had he raised it there and reiterated it in this Court, we would conclude that, on the facts of this case, there was no lack of jury unanimity at least with respect to contacting, as opposed to penetrating, Kemp's sexual organ. In the single transaction presented in this case, the appellant cannot have penetrated Kemp's sexual organ without having first contacted it. Every juror who found penetration would by necessity have also found contact, and there could be no lack of agreement, therefore, that the appellant *at least* caused Kemp's sexual organ to contact his own.[27] That being the case, even assuming (without deciding) that it was

---

[27] *See Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) ("[P]enile contact with . . . genitals . . . in the course of penile penetration will be subsumed."). A number of courts of appeals have held that jury unanimity is not a problem under these circumstances because, *e.g.*, "a jury that finds a defendant guilty of penetration of the sexual organ necessarily has determined unanimously that the defendant made contact with the sexual organ." *Santee v. State*, 247 S.W.3d 724, 728 (Tex. App.—Houston [1st Dist.] 2007, no pet.). *See also Hendrix v. State*, 150 S.W.3d 839, 848 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (Hendrix was not deprived of a unanimous verdict "because all of the jurors who believed there was penetration necessarily also believed that antecedent contact had occurred, and a non-unanimous verdict was not possible"); *Valdez v. State*, 211 S.W.3d 395, 400 (Tex. App.—Eastland 2006, no pet.) ("The allegation that Valdez caused J.V.'s anus to contact his sexual organ is subsumed with the allegation that he penetrated J.V.'s anus with his sexual organ. Every juror who believed that Valdez penetrated J.V.'s anus necessarily believed that the antecedent contact had occurred."). *Cf. Martinez v. State*, 212 S.W.3d 411, 420 (Tex. App.—Austin, pet. ref'd) ("Because there was evidence of multiple acts of aggravated sexual assault in this case, some of which only involved contact and not penetration, we cannot conclude from this record that the offense of contact was subsumed in the offense of penetration.").

error not to charge the jury that it must choose between the separate statutory offenses of penetrating Kemp's sexual organ, as opposed to merely contacting it, with his own sexual organ, there cannot have been egregious harm under *Almanza*.

### 3. Penile Contact Versus Digital Penetration

The appellant's jury could have convicted him without reaching agreement with respect to whether he caused Kemp's sexual organ to contact his own (Indictment Paragraph 1) or, alternatively, penetrated her sexual organ with his finger (Indictment Paragraph 2). These two theories of aggravated sexual assault almost certainly constitute separate offenses in contemplation of *Vick*, since they stem from separate subsections of the statute and constitute discretely specified conduct by which aggravated sexual assault may be committed. But the appellant did not complain on appeal of this potential violation of his right to jury unanimity either. Had he raised it on appeal, and assuming that we were to determine that jury charge error occurred, the next step would be to assay the record for egregious harm.

In a case involving unobjected-to jury unanimity error, we have said:

> Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole.[28]

---

[28] *Stuhler*, 218 S.W.3d at 719 (citations omitted).

In finding egregious harm from the failure of the jury charge to require agreement with respect to whether the appellant committed penile versus digital penetration, the court of appeals emphasized the State's insistence during jury argument that unanimity was not required—a carryover from voir dire. That is obviously an important consideration in any analysis of egregious harm *vel non*,[29] but it is not the only consideration. It is also relevant to the egregious harm analysis to inquire about the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case.[30]

We have already discounted the possibility of egregious harm with respect to penile contact versus penile penetration because contact is subsumed by penetration, and every juror would have, of necessity, at least found contact. In that context, there is no logical possibility of non-unanimity with respect to at least one of the theories of the offense—penile contact. But digital penetration does not similarly subsume penile contact. We are unable to say, therefore, that the jury necessarily reached unanimity with respect to at least one of these theories of aggravated sexual assault. Nevertheless, on the facts of this particular case, the likelihood of non-unanimity is exceedingly remote.

---

[29] *E.g.*, *Ngo v. State*, 175 S.W.3d 738, 750-51 (Tex. Crim. App. 2005).

[30] *E.g.*, *Landrian*, 268 S.W.3d at 542 (Price, J., concurring); *id*. at 544 (Womack, J., concurring); *Stuhler*, 218 S.W.3d at 721 (Keller, P.J., dissenting) (opining that jury-unanimity error for failing to require jury to agree whether the defendant caused serious bodily injury or serious mental injury was not egregiously harmful because the evidence offered to establish serious mental injury "was virtually conclusive").

The appellant's primary defensive posture, as evidenced by his own testimony, was that no sexual assault took place. Having convicted the appellant, the jury obviously rejected his version of the event. Whether or not the jury believed the appellant's exculpatory testimony was not a function of its ability to agree whether he penetrated her sexual organ digitally or contacted it with his penis. Thus, any error in the jury charge in failing to require such agreement did not serve to undermine the particular defense he chose to pursue. Did it, nonetheless, affect the very basis of the case or deprive him of a valuable right?

Discounting the appellant's exculpatory testimony, the evidence shows without contradiction that the appellant *at least* caused Kemp's sexual organ to come into contact with his own. Kemp testified that the appellant's penis both contacted and penetrated her vagina, but said nothing from the witness stand with respect to digital penetration. When the appellant had trouble maintaining an erection, she told the jury, he masturbated himself with his hand. He then got back on top of her with "[h]is penis in his hand" and penetrated her again. The treating physician, by contrast, understood Kemp to tell him that the appellant did *not* penetrate her sexual organ with his penis, but that he *did* penetrate it with his fingers. But the interpreter understood Kemp differently, testifying that she claimed that the appellant penetrated her with "both" his fingers and his penis, using his fingers as an "aid . . . because he was not able to keep his erection." One way or another, the evidence shows, he managed to deposit his semen on Kemp's perineum.

Given this state of the record, there was some evidentiary basis from which the jurors

might have disagreed whether the appellant penetrated Kemp's vagina with his penis, his finger, neither his penis nor his finger, or both his penis and his finger. But, having rejected the appellant's wholly exculpatory account, the collective jurors would have had no reason to doubt that, whether the appellant actually penetrated Kemp's vagina with either his penis or his finger, he was at least *attempting* to penetrate her vagina with his penis, and using his finger or fingers to facilitate that penile penetration. The evidence presented no rational basis for any juror who found that the appellant actually penetrated Kemp's sexual organ with his finger during this encounter to doubt that he also caused his penis *at least* to *contact* her sexual organ, even if he was unable to penetrate it. There was no evidence to the contrary. Any juror who voted to convict the appellant on the facts of this case under the theory that he penetrated her vagina with his finger must, at a minimum, have agreed that the appellant also contacted Kemp's sexual organ with his penis.

Under these circumstances, and notwithstanding the prosecutor's insistence that unanimity was not required, we hold that, on the particular facts of this case, the failure of the trial court to expressly require jury unanimity with respect to digital penetration versus penile contact, assuming it was error, neither affected the very basis of the case nor actually operated to deprive the appellant of his valuable right to a unanimous jury. The appellant did not suffer egregious harm.

**CONCLUSION**

Accordingly, we reverse the judgment of the court of appeals. Because the court of

appeals addressed and rejected all of the appellant's remaining points of error on appeal,[31] we affirm the judgment of the trial court.


DELIVERED:      April 2, 2014
PUBLISH

---

[31] *Jourdan*, 2013 WL 4859533, at *2-5.