

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1712-13

**DONALD AEKINS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### TRAVIS COUNTY

KELLER, P.J., filed a concurring opinion in which PRICE, KEASLER and HERVEY, JJ., joined.

We need not and should not create a new "merger" doctrine to dispose of the double-jeopardy question before us; rather, the question can be answered through a traditional multiple-punishments double-jeopardy analysis. Moreover, the Court's opinion appears to rely on concepts from *Grady v. Corbin*[1] that have since been disavowed by the Supreme Court.

### A. Double-Jeopardy Principles

For offenses to be the "same" for double-jeopardy purposes, they must be the same both in

---

[1] 495 U.S. 508 (1990).

"law" and in "fact."[2] These two aspects in which offenses can be the same has resulted in two different double-jeopardy analyses—one revolving around the elements of the respective offenses and the other inquiring into the allowable unit of prosecution.[3] Both analyses derive in part from *Blockburger v. United States*, though the case is more commonly associated with its "elements" discussion.[4] To prevail on a double-jeopardy claim, a defendant must prevail under both analyses; that is, the offenses must be considered the "same" under both the elements inquiry and the units inquiry.[5]

A threshold question for conducting an elements analysis is whether more than one statutory provision is at issue.[6] If only a single statutory provision is at issue, then the elements analysis ends in the defendant's favor, and we move on to a units analysis.[7] With respect to Penal Code offenses,

---

[2] *Ex parte Hawkins*, 6 S.W.3d 554, 557 n.8 (Tex. Crim. App. 1999) (quoting Akhil Reed Amar, *Double Jeopardy Law Made Simple*, YALE L.J. 1807, 1817-18 (1997) ("[A]n offense must not only be the same in law—it must also be the same in fact.")).

[3] *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

[4] *Compare Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not") *with id.* at 301-02 (finding no double-jeopardy violation from two narcotics sales that "although made to the same person, were distinct and separate sales made at different times").

[5] *Hawkins*, 6 S.W.3d 554, 557 n.8. *See also Ex parte Denton*, 399 S.W.3d 540, 548 (Tex. Crim. App. 2013) (Keller, P.J., concurring).

[6] *Blockburger*, 284 U.S. at 304 (predicating the same-elements test on the existence "of two distinct statutory provisions"); *Garfias*, 424 S.W.3d at 58 ("an 'elements' analysis is appropriate when the offenses in question come from different statutory sections").

[7] *See Garfias*, 424 S.W.3d at 58 ("a 'units' analysis is employed when the offenses are alternative means of committing the same offense"); *Loving v. State*, 401 S.W.3d 642, 645-46 (Tex. Crim. App. 2013) ("Both parties' arguments are predicated on the assumption that the proper

a section is generally considered to be a single statutory provision for this purpose.[8]

If we determine that more than one statutory provision is at issue, then the elements inquiry requires that we compare the elements of the offenses under the *Blockburger* same-elements test, using the cognate pleadings approach.[9] Under the same-elements test, we ask whether each offense "requires proof of a fact which the other does not."[10] The outcome of the same-elements test creates a presumption with respect to the legislature's intent to impose multiple punishments, but that

---

analysis includes the application of the *Blockburger* test and the cognate-pleadings approach. However, we employ that analysis only when the charged conduct involves multiple offenses in different statutory provisions that are the result of a single course of conduct . . . . In this case, the proper analysis is to determine whether the Legislature intended for the separate statutory subsections in a single statute to constitute distinct offenses. In other words, we must determine the allowable unit of prosecution"); *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999) ("Whether appellee may be subjected to multiple prosecutions under Texas Penal Code § 22.021 requires a statutory analysis to determine whether the Legislature intended multiple prosecutions. This is unlike a situation involving different statutes, which, by itself, is some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes."). *See also Cooper v. State*, 430 S.W.3d 426, 428 (Tex. Crim. App. 2014) (Keller, P.J., concurring).

[8] *Loving*, 401 S.W.3d at 646-47 (conducting a "units" inquiry where "two subsections of a single statute are at issue"). *See also Garfias*, 424 S.W.3d at 58 (conducting an "elements" analysis because the offenses at issue were proscribed by "different statutory sections"); *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010) (explaining that "the *Blockburger* 'same elements' test is not the sole test to be used" in the jury-unanimity or double-jeopardy contexts" and observing that different legal theories of capital murder that involve the same victim "are simply alternate methods of committing the same offense"); *Cooper*, 430 S.W.3d at 428 (Keller, P.J., concurring) (unit of prosecution inquiry applied at the outset because only one statutory section (codifying robbery) was at issue, though different subsections were involved).

[9] *Garfias*, 424 S.W.3d at 58-59.

[10] *Blockburger*, 284 U.S. at 304; *Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010) ("we compare the statutory elements of the greater offense, as they have been alleged in the charging instrument of that offense, with only the statutory elements of the lesser-included offense").

presumption may be rebutted by other factors.[11]

If a single statutory provision is at issue, or if two offenses proscribed by separate statutory provisions are deemed to be the same under the "elements" analysis, then we must conduct a units analysis to determine whether the offenses at issue involve the same allowable unit of prosecution.[12] A units analysis has two parts: (1) what the allowable unit of prosecution is,[13] and (2) how many units have been shown.[14] The first inquiry is purely a matter of statutory construction[15] and generally

---

[11] *Missouri v. Hunter*, 459 U.S. 359, 366-67 (1983) (where offenses are the same under the *Blockburger* same-elements test, Court infers that multiple punishments were not intended unless there is a "clear indication of contrary legislative intent"); *Garfias*, 424 S.W.3d at 59, citing *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) ("The *Blockburger* test cannot allow two punishments for a single course of conduct when the Legislature intended to authorize only one."); *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008) ("[I]t should be presumed that the Legislature did not regard two statutorily defined offenses to be the same if 'each provision requires proof of a fact which the other does not.' However, for purposes of multiple-punishments analysis, the *Blockburger* test is only a tool of statutory construction-and not even an exclusive one. An accused may be punished for two offenses that would be regarded as the same under a *Blockburger* analysis if the Legislature has otherwise made manifest its intention that he should be.").

[12] *Sanabria v. United States*, 437 U.S. 54, 69-70 & n.24 (1978); *Loving*, 401 S.W.3d at 645-46. *See also Cooper*, 430 S.W.3d at 428 (Keller, P.J., concurring); *Denton*, 399 S.W.3d at 550 (Keller, P.J., concurring) ("A units inquiry might more commonly arise when a single statute is involved and a court is trying to discern how to divide conduct (e.g., a sexual assault with multiple manners and means) into units . . . . Nevertheless, if offenses under different statutes are the 'same' elementally, then a units analysis could be appropriate if, for example, the pleadings or the evidence indicates that there are different victims.").

[13] *See e.g. Vick*, 991 S.W.2d at 832-34 (penetration of anus and sexual organ are different units in aggravated sexual assault); *Hawkins*, 6 S.W.3d at 556 (different victims are different units in a robbery); *Ex parte Cavazos*, 203 S.W.3d 333, 335-37 (Tex. Crim. App. 2006)(entry is the unit in a burglary).

[14] *See* authorities cited in previous footnote. *See also Blockburger*, 284 U.S. at 303 (Second drug sale was a separate offense because it "was not the result of the original impulse, but of a fresh one."); *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (can have multiple prosecutions for different incidents of the same type of sexual assault).

[15] *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2010).

requires ascertaining the focus or gravamen of the offense.[16] The second inquiry requires that we look at the trial record, which can include the evidence introduced at trial.[17]

Today, the Court's opinion appears to blur the distinction between an elements inquiry and a units inquiry by relying upon a non-constitutional merger doctrine that is sometimes employed as a matter of state law in some other jurisdictions. The Court seems to suggest that, when two offenses proscribe conduct that necessarily involves the same act, then the offenses are the same, regardless of other factors. This analysis is dangerously close to the "same-conduct" analysis in *Grady v. Corbin* that the Supreme Court rejected in *United States v. Dixon*.[18] It ignores one of the main rationales for conducting an elements inquiry—that different statutes may be directed at different evils even if the same conduct is often involved.[19] But even under a units inquiry (for offenses that are proscribed under the same statute or that are otherwise the same under an elements inquiry), whether the same conduct is necessarily involved is a consideration but is by no means determinative. A comprehensive analysis of relevant factors relating to the particular statute or statutes at issue is needed before one can conclude that a defendant has in fact engaged in only a single instance of conduct and that this single instance of conduct may be punished only once.

### B. Application

Counts two and three of the indictment alleged that appellant sexually assaulted the victim in the following ways:

---

[16] *Loving*, 401 S.W.3d at 647.

[17] *See Hawkins*, 6 S.W.3d at 557 n.8.

[18] 509 U.S. 688 (1993).

[19] *See United States v. Woodward*, 469 U.S. 105, 108-09 (1985).

Count 2:    causing the penetration of the victim's female sexual organ by appellant's mouth and/or tongue, and

Count 3:    causing the victim's female sexual organ to contact appellant's mouth.

These counts both alleged violations of Texas Penal Code § 22.011, though they alleged violations of different subsections, as follows:

A person commits an offense if the person . . . intentionally or knowingly:

(A) causes the penetration of the . . . sexual organ of another person by any means, without that person's consent, . . .

(C) causes the sexual organ of another person, without that person's consent to contact . . . the mouth . . . of another person, including the actor.[20]

The initial question is whether the two counts violate one statutory provision or two. Because the counts both allege violations of a single Penal Code section—§ 22.011 (the sexual assault statute)—they violate only one statutory provision for double-jeopardy purposes. Because the two counts violate only one statutory provision, the elements analysis ends.

Turning to a "units" analysis, we must first determine the allowable unit of prosecution that the legislature intended. In the present case, a statutory construction inquiry need not be conducted from scratch because there is a significant amount of caselaw regarding the unit of prosecution for the very similar aggravated-sexual-assault statute and for statutes involving other sexual offenses. Addressing the aggravated-sexual-assault statute in *Vick*, this Court concluded that "the Legislature intended that each separately described conduct constitutes a separate statutory offense."[21] We have later cited *Vick* and other sex-offense cases as formulating a general rule, with respect to sexual

---

[20]  TEX. PENAL CODE § 22.011(a)(1)(A), (C).

[21]  991 S.W.2d at 833.

offenses, "that different types of conduct specified in the various statutes be treated as separate offenses."[22] And in *Gonzales v. State*, we concluded that different types of conduct proscribed within the same subsection were different offenses.[23]

Here, we have the inverse of what happened in *Gonzales*: conduct that is not distinct being proscribed by different subsections. Although the subsections at issue will not always proscribe the same conduct, they will sometimes do so because the act of "penetration" necessarily includes the act of "contact." In *Jourdan v. State*, we addressed the jury-unanimity consequences of separately alleging counts involving penile contact and penile penetration that were based on different subsections of the aggravated-sexual-assault statute.[24] Although we recognized that an argument could be made that the contact and penetration offenses were separate due to the separate descriptions of the prohibited conduct in separate subsections of the statute,[25] we concluded that no jury-unanimity violation had occurred because the jury must at least have been unanimous in finding penile contact.[26]

Although *Jourdan* did not explicitly decide that the "contact" and "penetration" provisions of the statute involve the same unit of prosecution when the same conduct is involved, its holding

---

[22] *Huffman v. State*, 267 S.W.3d 902, 906 & n. 20

[23] 304 S.W.3d 838, 847-48 (Tex. Crim. App. 2010) ("[W]e may appropriately infer that the Legislature intended to create separate offenses for double-jeopardy purposes by virtue of the fact that it chose to proscribe separate acts in separate phrases, even within the same subsection, so long as those phrases are disjunctive and embrace discretely prohibited acts.").

[24] 428 S.W.3d 86 at 96-97 (Tex. Crim. App. 2014).

[25] *Id.*

[26] *Id.* at 97.

that there was no jury-unanimity violation lends significant support for that proposition. *Jourdan*'s holding does not simply mean that there was no jury-unanimity violation on the peculiar facts of the case; rather, the holding necessarily means that alleging contact and penetration with regard to the same conduct will never produce a jury-unanimity violation because the jurors will always at least be unanimous as to contact. Because the double-jeopardy and jury-unanimity issues in play in *Jourdan* constitute closely intertwined strands of our jurisprudence,[27] one would expect the jury-unanimity and double-jeopardy outcomes to be aligned. If the offenses in question could be submitted to the jury in the alternative without violating the right to jury unanimity then it would seem very likely that those offenses would also be the same for double-jeopardy purposes.[28]

Moreover, *Gonzales* and other cases teach that it is the differing nature of the conduct proscribed, rather than the distribution of the prohibitions in different subsections, that is controlling in the sexual-assault context. Sexual assault is a nature-of-conduct offense. The sexual assault statute defines the prohibited conduct in ways that *usually* require different acts to commit,[29] but when two subsections of the statute do not in fact proscribe different acts in a particular case, then they should be read as proscribing only a single offense.

One obvious explanation for the fact that different provisions of the sexual-assault statute will occasionally proscribe the same conduct is that the statute was worded expansively to ensure comprehensive coverage of prohibited sexual conduct. By including various methods of committing

---

[27] *Johnson v. State*, 364 S.W.3d 292, 296-97 (Tex. Crim. App. 2012); *Gonzales*, 304 S.W.3d at 848; *Gamboa v. State*, 296 S.W.3d 574, 583-84 (Tex. Crim. App. 2009); *Huffman*, 267 S.W.3d at 905.

[28] *See* authorities in the immediately preceding footnote.

[29] *See* footnote 23 and accompanying text.

sexual assault and defining these methods expansively, the statute guards against the possibility that blameworthy conduct will elude the reach of the statute's provisions. But at the same time, the expansive nature of the various statutory methods of commission means that in some cases, they will overlap.

In light of the above discussion, I would hold that contact and penetration that involves the same conduct is the same unit of prosecution in a sexual-assault case.[30] And because the evidence shows only one instance of oral sex in this case, the contact and penetration counts involve the same conduct, and therefore, proscribe the same unit of prosecution.

With these comments, I concur in the Court's judgment.

Filed: October 22, 2014
Publish

---

[30] Although the State frames the issue as involving whether *Patterson v. State*, 152 S.W.3d 88 (Tex. Crim. App. 2004), remains valid law, we need not resolve that question as a general matter. We need only hold that contact and penetration, which are statutorily specified manners of committing sexual assault, involve the same unit of prosecution when the same conduct is involved. As far as the record shows, the same conduct was involved in this case. And by same conduct, I do not mean same transaction. It is entirely possible for an offender to engage in more than one act of prohibited conduct at the same time.