**Affirmed; Opinion Filed July 27, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-16-01359-CR
_____

**MAC A. DEGRAFFINRIED, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 15050738-86-F**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart.
Opinion by Justice Lang

Following a plea of not guilty, appellant Mac A. Degraffinried ("Degraffinried") was convicted by a jury of evading arrest or detention while using a motor vehicle. The jury also answered "yes" to the special issue that Degraffinried used or exhibited a deadly weapon while evading arrest. The trial court assessed punishment of 45 years' incarceration.

In three issues on appeal, Degraffinried asserts (1) "[t]he evidence is insufficient that [a]ppellant used or exhibited a firearm during the commission of evading arrest while using a vehicle," (2) "[t]he trial court erred when it denied [a]ppellant's requested jury charge," and (3) "[a]ppellant's right to confront the witnesses against him was violated when the trial court considered the PSI at punishment." We decide against Degraffinried on all issues. The trial court's judgment is affirmed.

## I. Factual and Procedural Background

The indictment alleged in part that "on or about" October 21, 2015, Degraffinried "did then and there, while using a vehicle, intentionally flee from Officer Steve Johns, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant."

At trial, the State presented the testimony of James Lyons and Joe Paul Hobbs, both sergeants with the Terrell Police Department. Lyons testified that around 4:00 a.m. on October 31, 2015, he was dispatched to the home of Degraffinried's estranged wife in order to arrest Degraffinried. During his shift, Lyons was unable to locate Degraffinried. However, Lyons returned to Degraffinried's estranged wife's home after his shift in "an unmarked vehicle" "to maintain observation." While observing, Lyons saw Degraffinried come "out of the bushes by [a] vehicle," "get into the driver seat" of a car, and drive "southbound past [Lyons]." In his unmarked vehicle, Lyons "tried to follow along behind and keep sight of Degraffinried while radioing to the other units that [he] had [Degraffinried] in sight" and "[t]hey needed to come get a marked unit up there." Lyons continued to follow Degraffinried until he was joined by Officer Johns and Sergeant Hobbs who "moved in to make a stop" of Degraffinried. However, when Officer Johns and Sergeant Hobbs "attempted to make a stop on [Degraffinried's] vehicle, [the vehicle] did not yield."

Hobbs testified that when he "caught up to [Degraffinried]," he "activated [his] emergency lights" and started to follow Degraffinried's vehicle. Hobbs followed Degraffinried along various roads and highways where Degraffinried "reached speeds of approximately 80 to 90 miles [per] hour" before Degraffinried eventually returned to his estranged wife's home. Degraffinried then got out of his vehicle and "headed to the side door" of the home. At that point, it was "obvious to [Hobbs] that [Degraffinried] was holding something in his hand." Hobbs "[came] up to the front left side of [Degraffinried's] vehicle" where he "could see down the side of the house and [he]

could see that [Degraffinried] was kicking the door and he had a handgun in his hand." Hobbs then told Degraffinried to "drop the gun" and "get [his] hands up," but Degraffinried did neither. Hobbs "felt like [Degraffinried] was intent on getting inside the residence to do harm to the people inside at which point [Hobbs] began firing at [Degraffinried] with [his] rifle." Degraffinried then "went over [a] fence around the corner" where Hobbs could "see [Degraffinried] at the back door still actively trying to get into the residence." Hobbs then "fired one more time and [Degraffinried] fell to the ground." Degraffinried was then arrested.

## II. Deadly Weapon Finding

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. The *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

We are mindful that "[t]he trier of fact is the sole judge of the weight and credibility of the evidence." *Sartain v. State*, 228 S.W.3d 416, 424 (Tex. App.—Fort Worth 2007, pet. ref'd). We give "full play to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. "Circumstantial evidence is as probative as direct evidence in establishing the

guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dobbs v. State*, 434 S.W.3d 166, 169 (Tex. Crim. App. 2014). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

### B. Applicable Law

Section 38.04(a) of the Texas Penal Code provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE §38.04(a). The offense of evading arrest is a "continuous offense." *Hobbs v. State*, 175 S.W.3d 777, 778 (Tex. Crim. App. 2005).

"To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon," (2) "the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained," and (3) "that other people were put in actual danger." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

"Used" a deadly weapon during the commission of a felony offense "means that the deadly weapon was employed or utilized in order to achieve its purpose." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). "A deadly weapon may be 'used' even if it is merely possessed, if that possession facilitates the associated felony offense." *Smith v. State*, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, pet. ref'd) quoting *Patterson v. State*, 769 S.W.2d at 941. "'Exhibited' a deadly weapon means the weapon was "consciously displayed" during the commission of the offense." *Id*. A firearm is "per se a deadly weapon." *Ex parte Campbell*, 716 S.W.2d 523 (Tex. Crim. App. 1986).

## C. Application of the Law to the Facts

Degraffinried contends the evidence is "insufficient" to prove Degraffinried "used or exhibited" a firearm "during the commission of the evading arrest [sic] while using a vehicle." Specifically, Degraffinried argues (1) Hobbs testified he "didn't observe a handgun to be in [Degraffinried's] possession until [Degraffinried] was out of his vehicle and had commenced to kicking the door" of his estranged wife's home, (2) "the handgun wasn't even in [Degraffinried's] hand when he was finally apprehended", and (3) "none of the evidence…even hints…that anyone was ever [sic] placed in danger by the use or exhibition of the firearm." We cannot agree with Degraffinried.

The offense of evading arrest while using a vehicle is a continuing offense. *See Smith v. State*, 483 S.W.3d 648 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Therefore, it was not necessary for Hobbs to observe the handgun while Degraffinried was in the vehicle as Hobbs testified he saw Degraffinried holding a handgun after he left the vehicle and before he was arrested. *See id.* at n.6 ("abandoning one's vehicle during a police chase and continuing on foot is a continuation of evading in a vehicle.").

Further, there is no requirement that a handgun be in a defendant's hand when he is apprehended in order for the defendant to "use or exhibit" a deadly weapon. A deadly weapon is "used" when its possession "facilitates [an] associated felony offense." *See Smith*, 176 S.W.3d at 919 quoting *Patterson v. State*, 769 S.W.2d at 941. A deadly weapon is "exhibited" when it is "consciously displayed" during the commission of an offense. *Id*. In this case, Hobbs testified he saw Degraffinried holding a handgun and "actively" trying to "get into the residence" even after Hobbs told him to "drop the gun" and "get [his] hands up."

Finally, Degraffinried contends there is no evidence that "even hints" anyone was placed in danger. However, Hobbs testified that when Degraffinried was holding the handgun, he "felt like [Degraffinried] was intent on getting inside the residence to do harm to the people inside."

On this record, we conclude a rational trier of fact could find beyond a reasonable doubt that Degraffinried used or exhibited a deadly weapon during the commission of evading arrest while using a vehicle. We decide against Degraffinried on his first issue.

### III. Jury Charge

#### A. Standard of Review

We review alleged jury charge error in two steps. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists in the charge. *Id*. at 649. Second, if charge error exists, we review the record to determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Where, as here, error is properly preserved by a timely objection to the charge, reversal is required only if the error was "calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm" caused to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). In analyzing harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 171. The defendant must have suffered "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

#### B. Applicable Law

"Under the Texas Constitution, a jury verdict in a felony case is required to be unanimous, and under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d at 745. "Unanimity in this context means that each and every juror agrees that the defendant

committed the same, single, specific criminal act." *Id*. "The requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014).

### C. Application of the Law to the Facts

The trial court submitted a single special issue that instructed the jury that it must "determine beyond a reasonable doubt whether or not [Degraffinried] used or exhibited a deadly weapon, to-wit, a motor vehicle and/or firearm, during the commission of the offense." During the charge conference at the guilt-innocence stage of the trial, Degraffinried's counsel objected to the deadly weapon special issue being "presented to the jury as one special issue" and requested the trial court submit two special issues, one for the motor vehicle and one for the firearm. The trial court overruled the objection.

Degraffinried contends "the trial court erred when it denied [Degraffinried's] requested jury charge" because "combining the [deadly weapons] into one issue might lead to a non-unanimous verdict." We disagree. The jury may be "charged in the disjunctive" for "differing methods of committing [an offense]." *Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991). Therefore, it was not necessary for the jurors to unanimously agree whether the deadly weapon was a motor vehicle or a firearm. *See Marinos v. State*, 186 S.W.3d 167 (Tex. App.—Austin 2006, pet. ref'd) ("[i]t was not necessary for the jurors to [unanimously] agree whether the weapon was a bag, a piece of bag, or appellant's hand."). The trial court did not err in submitting a single deadly weapon special issue. We decide against Degraffinried on his second issue.

## IV. Pre-Sentencing Investigation Report

### A. *Applicable Law*

"A [pre-sentencing investigation report] is used in all non-capital felony cases when community supervision is an option and the judge is assessing punishment but does not intend to follow a plea-bargain agreement under which the defendant has agreed to imprisonment." *Stringer v. State*, 309 S.W.3d 42, 45 (Tex. Crim. App. 2010). "The judge must order a PSI unless the defendant requests that one not be made and the judge agrees, or the judge determines that there is sufficient information in the record to permit sentencing discretion and explains his reasoning on the record." *Id*. "[W]hen a PSI is used in a non-capital case in which the defendant has elected to have the judge determine sentencing" the Confrontation Clause does not apply. *Id*. at 48.

### B. *Application of the Law to the Facts*

During the punishment phase of the trial, a pre-sentencing investigation report ("PSI") respecting Degraffinried was submitted as evidence for the trial court's consideration. The State offered the PSI based upon the testimony of a probation officer supervisor who approved the report. The probation officer who compiled the report had resigned from the probation department. Prior to the admission of the PSI, Degraffinried's counsel objected to its admission "under Crawford" because the defense would not have "the opportunity to cross-examine the actual officer that conducted the interview and subsequently the report." The objection was overruled, and the trial court granted Degraffinried's counsel's request for a "running objection" regarding the PSI.

On appeal, Degraffinried argues the State "presented the testimony of the supervisor who had merely 'approved' the PSI" and therefore his "right to confront the witnesses against him was violated when the trial court considered the PSI at punishment." We disagree. When a sentence is determined by the trial court, the information in a PSI is not subject to the Confrontation Clause. *See Stringer v. State*, 309 S.W.3d at 48. We decide against Degraffinried on his third issue.

## V. Conclusion

We decide against Degraffinried on his first, second, and third issue. The trial court's judgment is affirmed.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



Do Not Publish
TEX. R. APP. P. 47.2
161359F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MAC A. DEGRAFFINRIED, Appellant

No. 05-16-01359-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 15050738-86-F.
Opinion delivered by Justice Lang. Justices Myers and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 27th day of July, 2018.