**AFFIRMED AS MODIFIED and Opinion Filed December 4, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00391-CR

### BILAWAL SHAHZADA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1659528-N**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Whitehill

A jury convicted appellant of retaliation and assessed punishment at twelve years imprisonment. In eight issues that we distill to four subjects, appellant argues that: (i) the evidence is insufficient to support his conviction; (ii) the trial court erred in admitting evidence about his arrest; (iii) his out-of-state conviction was improperly used for enhancement; (iv) the trial court erroneously denied his motion for new trial without a hearing; and (v) he was egregiously harmed because the jury charge did not require a unanimous verdict.

In a cross-point, the State requests that we modify the judgment to reflect that appellant pled true to the enhancement paragraph and the jury found it true.

We conclude that: (i) the evidence is sufficient to support the conviction because (a) it shows that appellant intended to communicate a threat and (b) whether he was immediately capable

of acting on that threat or knew that the officer had children was immaterial to whether he intended to harm the officer;

(ii) the trial court did not abuse its discretion by admitting evidence about the reason appellant was arrested because the court could reasonably have concluded that the evidence was contextual and its probative value outweighed the danger of unfair prejudice;

(iii) it was not error to deny appellant's motion for new trial because (a) his out-of-state conviction was properly used for enhancement and, (b) no hearing was required because appellant did not establish reasonable grounds for a new trial that were undeterminable from the record; and

(iv) there was no charge error.

We therefore modify the judgment to reflect that appellant pled true to the enhancement paragraph and the jury found it true. As modified, we affirm the trial court's judgment.

## I. BACKGROUND

Appellant was arrested for aggravated robbery. Specifically, the Dallas Police department believed that appellant was a "pimp" who stabbed a "John" with a knife while trying to rob him. Officer Crespin, the complainant, was one of the officers involved in escorting appellant to the police station for questioning and his subsequent arrest. During that time, appellant was belligerent and combative, and he made threats against Crespin that included threats to harm her and her family.

A jury found appellant guilty of retaliation and, after finding the enhancement allegation true, assessed punishment at twelve years imprisonment. Appellant filed a motion for new trial which the court denied without a hearing.

## II. ANALYSIS

**A.      First and Second Issues:  Is the evidence sufficient to support the conviction?**

### 1.      Standard of Review

Appellant's first and second issues argue that the evidence is insufficient to support his retaliation conviction because (i) it did not establish that he "intended true threats" and (ii) the evidence showed that he "did not threaten the complainant's family in addition to threatening complainant" as charged in the indictment.  We disagree.

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the fact finder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).  And the fact finder is the sole judge of the evidence's weight and credibility.  *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for the factfinder's judgment. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).  Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.  *Murra*y, 457 S.W.3d at 448.  We must presume that the fact finder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

**b.      Facts**

The evidence shows that Crespin was one of the officers involved in arresting appellant. When he was taken to the interrogation room to wait for the lead detective to arrive, he became hostile and aggressive.

When the officers left appellant alone, he paced around the room, screamed, kicked over a table and chair, kicked the door and walls, and hit his head against a wall. Several officers entered the room, pushed appellant on the ground, and instructed him to "be cool." Appellant said, "Pull that mother f– Glock out, n–. F–k, you think I'm worried about you? . . ."

The officers left the room once appellant calmed down. After they left, appellant paced around the room, tried to pull an alarm button out of the wall, and resumed kicking and hitting his head against the walls. Crespin and another officer, Officer Ramirez, returned to the room and told appellant to stop destroying property.

Appellant responded to Ramirez, "I'll catch your ass on the f– street." He followed up with "f–k you and that badge, and then looked at Crespin and said, "you too, bitch." Crespin then asked appellant to repeat his statements for the camera to remind him that he was being recorded. He looked at Crespin and Ramirez and said, "All you gonna get murdered . . . It's coming for you, the new world order. I'm on that underground shit." Crespin believed the comments were directed toward her and Ramirez.

Detective Lacy finally arrived and interviewed Appellant. Afterwards, appellant sat quietly and calmly for six minutes, then he flipped over one of the chairs that Lacy had brought into the room. Crespin, Ramirez, and several other officers came in and took the chairs. Appellant told

–4–

Ramirez, "I wish you would come in here by yourself, bitch, I'd beat your ass." As appellant continued by calling him a "little n–," Ramirez and the other officers calmly walked out of the room.

Immediately after the officers left, appellant kicked two walls, slightly dislodging the hidden camera, while yelling "all you mother f–s gonna die anyway." He also ripped the alarm button out of the wall, setting off the alarm. Then he punched the walls repeatedly like a boxer. Ramirez and Crespin reentered the room and handcuffed appellant. Appellant called Ramirez a "bitch-ass n–" and told him to take the handcuffs off him, saying, "Take 'em off, n– . . . I'll find you and your whole family." Ramirez asked him to "repeat" that, and appellant responded, "N–, you heard what the f– I said . . .N–, you and your mother f– family." After repeating this a few times, appellant said, "This is why all you bitch-ass n–s gonna die."

As the officers tried to escort appellant out of the room, he pulled away and tried to kick Crespin. She managed to avoid his efforts and told him, "not today." The officers shackled his arms and feet and carried him to a patrol car to be taken to jail.

Crespin drove appellant to jail by herself. The ride was mostly calm, but when appellant asked what he was being arrested for, he became very irate when Crespin told him. He told Crespin she didn't know who he was, that he was from another country, the "underground people who will kill [her] and [her] kids." He also told her that he was a known terrorist, so she needed to be careful." These threats upset Crespin.

Appellant continued cursing and "being belligerent" in the book-in area. He later calmed down, and apologized to Crespin, saying, "You're not a bitch. I'm sorry for calling you that. You're a woman. I respect women. You know, I don't know if you have kids. But, you know, I didn't mean all that."

Appellant seemed to have calmed down, so Crespin told the officers whose shifts were ending that they could leave. But appellant became agitated again when he thought things were taking too long. He told Crespin, "I'll kill you like them Chicago cops were killed." Then he told her he would "do something" in ten seconds if she didn't call a supervisor. Appellant counted to ten, flipped the two chairs next to him, charged Crespin and "football tackled" her. Several officers got appellant off of Crespin and restrained him to a chair.

Crespin testified that she endures abusive people all the time, but appellant crossed the line when he mentioned her kids. Appellant threatened her, and had ultimately followed through with his threats against her with a physical assault. She feared for her life and the safety of her family, and believed that appellant was retaliating against her as the arresting officer.

Officer Thayer first encountered appellant in the interview room, and appellant was "out of control" and "screaming threats to everybody." Thayer believed that appellant's behavior was deliberate, and appellant was using his "verbal judo" to pick a fight and "bait" anyone he could.

Another officer, Officer Goetz, saw Crespin after the assault. Crespin was "physically upset," "more than just normal," and told Goetz about appellant's threat to kill her and her family. Goetz could tell that this "set [her] off" and made her "not . . . [her] normal self." Goetz has seen Crespin under high stress situations before, and did not believe that she was "just being sensitive."

**c.    Analysis**

A person commits retaliation if he intentionally or knowingly harms or threatens to harm a public servant with an unlawful act "in retaliation for or on account of [his or her] service or status." TEX. PENAL CODE § 36.06(a)(1)(a). Appellant was charged under this statute for verbally threatening to kill Officer Crespin and her family because she detained and arrested him.

Appellant, however, insists that (i) his threats were not "true threats" expressing a serious intent to commit an unlawful act; (ii) his threats were not possible to fulfill because he was

shackled and handcuffed, and when he apologized to Crespin he admitted that he did not know if she had children; and (iii) the State failed to prove retaliatory intent. Finally, he argues that Thayer believed appellant was just "baiting" the officers and testified that he did not feel threatened.

We reject those arguments because the evidence showed that appellant's threats were threats as defined by the statute; his threat did not need to be immediately viable; and the jury could rationally infer appellant's retaliatory intent from his conduct. We begin with appellant's argument that his threats were not "true threats."

Retaliation requires that the actor knowingly or intentionally (i) harms *or* (ii) threatens to harm. *See* TEX. PENAL CODE §36.06. To "threaten" can mean: (i) declaring an intention of hurting or punishing someone, (ii) a menacing indication of something dangerous or evil, (iii) an expression of an intent to inflict injury, or (iv) a source of danger or harm. *See Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006). And an accused's intent can be inferred from his acts, words, and conduct. *See Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). Furthermore, a defendant's retaliatory motive can be shown by circumstantial evidence. *Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, pet ref'd). Thus, it follows that the accused's required intent to threaten harm can be proved by circumstantial evidence consisting of his or her acts, words, and conduct.

Appellant cites four cases on "retaliatory intent": *Elonis v. United States*, 135 S.Ct. 2001, 2010 (2015); *Watts v. United States*, 394 U.S. 705, 705–06 (1969); *United States v. Bagdesarian*, 652 F.3d 1113, 1115, 1116 (9th Cir. 2011); and *United States v. Dutcher*, 851 F.3d 757, 760–762 (7th Cir. 2017). But none of these cases have any application here because they all involved federal statutes, constitutional issues, and facts not present in this case.

Appellant also argues that Thayer believed that appellant was just "baiting" the officers and did not feel threatened. The issue, however, is unrelated to Thayer's perceptions and beliefs; rather, the question was whether appellant threatened Crespin.

Appellant's attempt to distinguish a "true threat" is misplaced. If a person's conduct violates the retaliation statute because the person has in fact "threaten[ed] to harm another by an unlawful act," as opposed to a rhetorical statement that implicates First Amendment concerns, that conduct is a "true threat." *Longoria v. State*, No. 03-16-00804-CR, 2018 WL 5289537, at *8 (Tex. App.—Austin Oct. 25, 2018, no pet. h.) (mem. op.). Thus, the definition of a "true threat" is incorporated into the statutory definition of the offense.

Here, appellant was verbally abusive and threatening to harm the officers in the interview room when they were doing things he did not like. He told Crespin to be careful about what she was doing, demonstrating his intent to affect her conduct with his words. He verbally threatened Crespin with harm and then followed up with a body tackle. Appellant further told Crespin that he would harm her and her family, and she believed that the threats were in retaliation for having arrested him.

Next, we examine appellant's argument that his threats were not possible to fulfill because he was shackled and handcuffed and because he admitted he did not know if Crespin had children. But appellant provides no support for the proposition that the threatened harm must be imminent, nor is there any such requirement in the statute. *See* TEX. PENAL CODE § 36.06(a)(1)(a).

Moreover, courts have routinely determined that a defendant made a threat when it implicated future action. *See, e.g., Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, no pet.) (retaliation where the defendant already under arrest and handcuffed told a police officer that he was going to blow his brains out); *Coward v. State*, 931 S.W.2d 386, 389 (Tex.

App.—Houston [14th Dist.] 1996, no writ) (retaliation where the defendant already in handcuffs told an officer that he would return to blow his head off once out of jail).

The argument concerning his lack of knowledge about whether Crespin had children also misses the point. Appellant was not charged with threatening harm to Crespin's children. Instead, he was charged with threatening to harm Crespin by threatening to kill her and her children. Moreover, this threat is akin to a threat to engage in future harm by later finding and harming Crespin's children.

On this record, we conclude that a jury could rationally conclude that appellant threatened Crespin because of her status and service as a public servant. We thus resolve appellant's first and second issues against him.

**B.      Third, Fourth, and Fifth Issues:  Did the trial court abuse its discretion by admitting evidence concerning the reason for appellant's arrest?**

Appellant's third, fourth, and fifth issues argue that the trial court abused its discretion by admitting evidence to explain why he was arrested because (i) the evidence was improper character conformity evidence, (ii) the evidence was unduly prejudicial, and (iii) the court refused to articulate the balancing test on the record. We reject these arguments because the trial court could reasonably have concluded that (i) the evidence was admissible context evidence instead of character conformity evidence and (ii) the evidence's probative value outweighed its prejudicial impact. Furthermore, the record sufficiently reflects that the trial court balanced the competing interests before making its ruling.

**1.      Applicable Law**

We review under an abuse of discretion standard the trial court's decision to admit or exclude evidence and whether evidence's probative value of evidence was substantially outweighed by the danger of unfair prejudice. *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim.

App. 1996). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id*.

Evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. TEX. R. EVID. 401. But even relevant evidence may not be admissible for every purpose. Because our system of justice recognizes that a defendant should be tried only for the charged crime and not for his criminal propensities, evidence of extraneous offenses is normally inadmissible. *See Robles v. State,* 85 S.W.3d 211, 213 (Tex. Crim. App. 2002).

Rule 404(b), however, allows evidence of other crimes, wrongs, or acts to be admitted if the evidence is relevant apart from character conformity. For example, '"where several crimes are intermixed, or blended with one another, or connected so they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others,' this evidence is evidence of same transaction contextual evidence which is an exception to Rule 404(b) and is thus admissible." *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996) (citing *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). As the *Pondexter* court held, ". . . the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Pondexter*, 942 S.W.2d at 584.

Nonetheless, even if the evidence is relevant and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.2d 622, 626 (Tex. Crim. App. 2003).

When undertaking a Rule 403 analysis, a trial court must balance (i) the inherent probative force of the proffered item of evidence along with (ii) the proponent's need for that evidence against

(iii) any tendency of the evidence to suggest decision on an improper basis, (iv) any tendency of the evidence to confuse or distract the jury from the main issues, (v) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (vi) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018).

Unless the record indicates otherwise, we presume the trial court conducted a 403 balancing test even if the court does not state on the record that it did so. *See Rojas v. Sta*te, 986 S.W.2d 241, 250 (Tex. Crim. App. 1988). Thus, when the record shows the judge listened to the defendant's objections and subsequently overruled them, there is no error. *Benedict v. State*, No. 05-15-00958-CR, 2016 WL 3742127, at *2 (Tex. App.—Dallas Jul. 7, 2016, pet. ref'd) (mem. op. not designated for publication).

## 2.     Analysis

Defense counsel objected to the State eliciting testimony about why appellant was arrested, and the court conducted a hearing outside the jury's presence. During that hearing, the State argued that, while it did not need to go into details about the stabbing, it needed to show that appellant was arrested in connection with a stabbing investigation to provide context for the retaliation offense. To this end, the State noted that appellant's detention video showed appellant asking over and over why he had been arrested, and thus some contextual information about his arrest was necessary to show that he was not illegally detained. On the other hand, the defense argued that the extraneous offense was separate from the charged offense, and the prejudicial effect of the evidence outweighed its probative value.

The trial court ruled that the State could not get into any specifics about the stabbing, but could admit that the police were investigating a stabbing, that bleach was used at the crime scene,

–11–

and that appellant smelled like bleach when he was interviewed. Defense counsel then stated, "Can we get on the record a balancing test, Your Honor, for the finding that there's not enough prejudice to keep this out?" The trial judge replied, "I find it's relevant, and it goes to contextual evidence for the jurors. So it's admitted."

### a.      Did the probative value outweigh the potential for unfair prejudice?

Applying the balancing test factors, we cannot conclude the trial court's ruling was outside the zone of reasonable disagreement. First, we examine the evidence's probative force and the State's need for it, both of which favor admission. The fact that appellant had been arrested in connection with a stabbing showed his retaliatory intent and that the threats were directed at Crespin for arresting him, both of which were elements the State was required to prove.

The next three factors—tendency to suggest a decision on an improper basis, confuse or distract the jury, or to be given undue weight by an unequipped jury— also favor admission. That appellant was arrested for a stabbing that took time to investigate does not suggest a decision on an improper basis. Instead, it shows why appellant was detained, the reason for his aggravation, and allowed the jury to evaluate his retaliatory intent. The evidence was also relevant because the detention video that was admitted into evidence shows appellant in a highly agitated state repeatedly asking why he was arrested. Moreover, there is nothing to suggest the jury would be distracted or confused, or give the evidence undue weight. The trial court limited the evidence to an explanation about why appellant was arrested, that bleach was used at the crime scene, and that appellant smelled like bleach. Indeed, had the evidence not been admitted, the jury may have speculated about why appellant was questioned and arrested and whether his outrage at being detained was justified.

In addition, the evidence did not consume an inordinate amount of time. Crespin testified that she received a stabbing call, a description of the suspect, and was told that the suspect was

believed to have cleaned up the crime scene with bleach. When she was in a restaurant, she noticed two people, one of whom was appellant, who smelled like bleach. So she called for cover and waited outside the restaurant where appellant was ultimately detained. Ramirez and Goetz both explained that they responded to the stabbing call, and then moved on to appellant's conduct and threats.

### b. Was the evidence contextual?

While evidence of other crimes, wrongs, or acts is not admissible to prove a person's character to show conformity therewith, it may be admissible for other purposes. *Se*e TEX. R. EVID. 404(b). One such purpose is same-transaction contextual evidence. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). Same-transaction contextual evidence refers to when several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction. *Id*. at 731–732. Thus, when the State's proof of the charged crime is so intertwined with another crime that avoiding reference to the other crime would make the State's case incomplete or difficult to understand, the evidence may be admissible. *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Here, the trial court could have reasonably concluded that the State needed to reference the arrest to give the retaliation offense context. That is, to allow the jury to understand the impetus for appellant's retaliatory threats. Moreover, it also showed that appellant was retaliating against Crespin because of her service as a police officer.

Under these circumstances, we cannot conclude the trial court abused its discretion by admitting the evidence. We resolve appellant's third, fourth, and fifth issues against him.

### C. Sixth and Seventh Issues: Did the trial court err by denying appellant's motion for new trial without a hearing?

Appellant's sixth and seventh issues argue that the trial court erred by denying his motion for new trial because, (i) he established that his out-of-state conviction was improperly used for

enhancement and (ii) he was deprived of effective assistance of counsel because his attorney did not tell him this conviction could not be used for enhancement. He further argues that the trial court was required to conduct a hearing. We reject these arguments because his out-of-state conviction was properly used for enhancement and his ineffective assistance claim was erroneously premised on the assumption that his lawyer was ineffective for failing to advise him the opposite. Moreover, no hearing was required because appellant did not raise reasonable grounds not determinable from the record.

### 1. Out of State Convictions Used for Enhancement Purposes

We begin with the out-of-state conviction used for enhancement.[1] Appellant pled true to the indictment's sentence-enhancement allegation. His plea of true, standing alone, was sufficient to support the enhancement of his sentencing range. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *see also Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006) (plea of true relieves state of burden to prove prior conviction except when record affirmatively reflects that enhancement is improper).

When an appellant pleads true to an enhancement, it relieves the State of its burden to prove the allegations. Then, the appellant must show that the record affirmatively reflects that the enhancement was improper. *See Hopkins v. State*, 487 S.W.3d 583, 587 (Tex. Crim. App. 2016).

The enhancement allegation in this case stated that appellant was convicted of felony unlawful wounding in Fairfax County, Virginia in 2012. The State introduced a "penpack" from Virginia that included a judgment of conviction. The judgment reflects, among other things, that appellant was found guilty and sentenced to incarceration for one year and six months. The

---

[1] Retaliation is a third degree felony. TEX. PENAL CODE §36.06(c). A third degree felony is punishable by imprisonment from two to ten years and a fine not to exceed $10,000. *See* TEX. PENAL CODE 12.34. But the punishment may be enhanced to a second-degree felony if the defendant has been previously convicted of a felony other than a state jail felony. *See* TEX. PENAL CODE. A second degree felony is punishable by a term of imprisonment from two to twenty years and a fine not to exceed $10,000. *See* TEX. PENAL CODE 12.33.

–14–

judgment also says that appellant is "subject to a period of post release supervision of two years," which was "suspended." A sentencing summary shows that the "total sentence imposed" was "one year and six months," and the total sentence suspended was "none."

An out-of-state felony conviction can be used to enhance a sentence imposed in Texas. *Ex parte Pue*, 552 S.W.3d 226, 231 (Tex. Crim. App. 2018). The prior sentence, however, must be final. *Id*. at 230. Finality is determined according to Texas law. *Id*. at 235. Under Texas law, a conviction is final if a sentence is imposed and not probated or revoked. *Ex Parte Murchison*, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978).

Appellant argues, without supporting authority, that the Virginia court's imposition of post-release supervision was "probation," or alternatively, "shock probation," and therefore, his Virginia conviction was not final for enhancement purposes. We disagree.

In Texas, "probation" is called community supervision. *See* TEX. CODE CRIM. PROC. art. 42A.001(1). This occurs when a court "place[s] . . . a defendant . . . under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which: (A) criminal proceedings are deferred without an adjudication of guilt; or (B) a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part." *Id*.

"Shock probation" in a felony case occurs when the court, before the expiration of 180 days from the date the sentence begins, suspends further execution of the sentence and places the defendant on community supervision. TEX. CODE CRIM. PROC. art. 42A.202(b).

On the other hand, the Virginia code shows that Virginia's post-release supervision is more akin to parole, and occurs after the defendant serves his sentence. Post-release supervision is

–15–

mandatory unless the court orders a suspended term of confinement for at least six months.  *See* VA. CODE §19.2-295.2[2]

Here, nothing in the record affirmatively reflects that appellant's eighteen month sentence was not final because it was suspended or probated.  Indeed, the affidavit appellant filed to support his new trial motion affirmatively states that he was sentenced to a term of confinement in Virginia, and subject to post-release supervision for two years after he was released.  Although appellant was not re-incarcerated for violating the terms of his post-release supervision, this has no bearing on the eighteen month sentence he served without interruption.

Because appellant pled true to the enhancement allegation and the record does not affirmatively show the enhancement was improper, the trial court did not err by denying his motion for new trial on this ground.

Likewise, because appellant's ineffective assistance claim was premised solely on his assertion that his attorney did not tell him that the Virginia conviction could not be used for enhancement, which premise we just rejected, the motion for new trial was properly denied on this ground as well.

### 2. Denying the New Trial Motion Without a Hearing

Appellant also argues that the trial court erred by denying his motion without a hearing. We review the denial of a hearing on a motion for new trial for abuse of discretion.  *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009).  A trial court abuses its discretion by refusing a

---

[2]Specifically, the Virginia law provides: At the time the court imposes sentence upon a conviction for any felony offense committed (i) on or after January 1, 1995, the court may, and (ii) on or after July 1, 2000, shall, in addition to any other punishment imposed if such other punishment includes an active term of incarceration in a state or local correctional facility, except in cases in which the court orders a suspended term of confinement of at least six months, impose a term of postrelease supervision of not less than six months nor more than three years, as the court may determine.  Such additional term shall be suspended and the defendant placed under postrelease supervision upon release from the active term of incarceration. . . . The period of postrelease supervision shall be under the supervision and review of the Virginia Parole Board.  The Board shall review each felon prior to release and establish conditions of postrelease supervision.  Failure to successfully abide by such terms and conditions shall be grounds to terminate the period of postrelease supervision and recommit the defendant to the Department of Corrections or to the local correctional facility from which he was previously released.  Procedures for any such termination and recommitment shall be conducted in the same manner as procedures for the revocation of parole.

motion for new trial hearing if a defendant demonstrates, by the motion and accompanying affidavits, that (i) the defendant has raised grounds that are undeterminable from the record, and (ii) the grounds are reasonable, meaning they could entitle the defendant to relief. *Id.*

Appellant's motion raised four issues: (i) his sentence was illegal because his punishment range was improperly enhanced; (ii) his counsel was ineffective because he did not object to his Virginia conviction or counsel him to plead not true to the enhancement allegation; (iii) he was denied the right to request community supervision from the jury because he pled true to an invalid prior conviction; and (iv) his election of punishment was not voluntary because he did not know he could request community supervision from the court. Appellant's affidavit and the affidavit of Roger Smotts, an investigator with the Public Defender's office, were filed in support of the motion.

Appellant's affidavit states that his attorney never discussed the effect of his Virginia conviction on enhancement and he never would have pled true had he known there were "legal issues" with using that case. Both affidavits describe appellant's Virginia sentence and assert that his post-release supervision was never revoked. All of these assertions go to appellant's first three arguments in his motion—that his Virginia conviction was not final and was therefore unavailable for enhancement, making his twelve year sentence illegal. But all three of these issues could be resolved from the record, and we have already concluded that the Virginia conviction was properly used for enhancement.

Finally, no hearing was required on appellant's claim that he was not aware he could receive community supervision from the court. Neither affidavit set forth any factual basis for this claim, including the assumption that appellant was eligible for community supervision. Thus, the trial court was not required to conduct a hearing. *See Hobbs*, 298 S.W.3d at 200. We resolve appellant's sixth and seventh issues against him.

**D. Eighth Issue:  Did the charge require a unanimous verdict?**

Appellant's eighth issue argues that he was egregiously harmed because the jury charge did not require a unanimous verdict.  Specifically, he contends that the charge was erroneous because it did not require the jury to unanimously select one of the twelve instances of verbal retaliatory threats to support the offense.  We reject this issue.  The charge was not erroneous because the jury was not required to agree on one specific retaliatory threat, and thus, contrary to appellant's assertion, the charge properly required a unanimous verdict.  Because there was no error, we do not consider harm.  *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017).

**1.  Background**

After defining the crime of retaliation, the jury was instructed to find appellant guilty of retaliation if they found, beyond a reasonable doubt that appellant knowingly or intentionally harmed or threatened to harm Crespin by verbally threatening to kill her and her family in retaliation for or on account of her service as a Dallas Police Officer.  The jury was further instructed that the "verdict must be unanimous."  The verdict form states that the jury unanimously found appellant guilty of retaliation.

**2.  Applicable Law**

We use a two-step process to analyze an alleged charge error.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  First, we decide whether an error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal.  *Arteaga*, 521 S.W.3d  at  333.  The degree of harm required for reversal depends on whether there was an objection to the error in the trial court.  *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).  When, as in this case, appellant failed make a timely and specific trial objection, the error requires reversal

only if it was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Id.*

"Texas law requires that a jury reach a unanimous verdict about the specific felony that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). In other words, "the jury must be unanimous in finding every constituent element of the charged offense. . ." *Jourdon v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014).

The court of criminal appeals holds that there are "three variations that may result in a non-unanimous verdict as to a particular incident of criminal conduct that comprises the charged offense." *Cosio*, 353 S.W.3d at 771. Specifically, non-unanimity may occur when: (i) the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results differ; (ii) the State charges one offense and presents evidence that the defendant committed the offense on multiple but separate occasions; and (iii) when the State charges one offense, and presents evidence of an offense committed at a different time, that violated a different provision of the same criminal statute. *Id.* at 771–72.

Although a jury must unanimously agree about the occurrence of a single criminal offense, they need not be unanimous about the specific manner and means of committing the offense. *See Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011); *see also Miranda v. State*, 391 S.W.3d 302, 310 (Tex. App.—Austin 2012, pet. ref'd). "'[M]anner or means' describes how the defendant committed the specific statutory criminal act." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). Thus, while the jury must agree that the defendant committed one specific crime, it is not required to unanimously find that the defendant committed that crime in one specific way or even with one specific act. *See Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *see also Jourdan*, 428 S.W.3d at 94 (jury unanimity not violated if jury allowed to choose among alternative manner and means).

### 3.    Analysis

Here, the threats appellant made were different ways of committing the offense.  The results did not differ and the threats were all made on the same occasion.  Thus, the jury was not required to agree on one specific threat; they only had to unanimously agree that appellant committed the offense by making a retaliatory threat.  The charge was worded to that effect, and therefore was not erroneous.  Because there was no error, we need not determine whether appellant was egregiously harmed.  We resolve appellant's eighth issue against him.

### E.    State's Cross-point:  Should the judgement be reformed?

The State requests that we modify the judgement to reflect that appellant pled true to the enhancement paragraph and the jury found it true.  We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so.  *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993).

Here, the record reflects that appellant pled true to the enhancement and the jury found it true.  We therefore sustain the State's cross-point and modify the judgment accordingly.

### III.   CONCLUSION

Having resolved all of appellant's issues against him and sustained the State's cross-point, we modify the judgment to reflect that appellant pled true to the enhancement and the jury found it true, and as modified, affirm.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
170391F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BILAWAL SHAHZADA, Appellant

No. 05-17-00391-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1659528-N.
Opinion delivered by Justice Whitehill.
Justices Stoddart and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that appellant pled true to the enhancement paragraph and the jury found it true. As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered December 4, 2018.