**Affirmed in Part, Vacated and Dismissed in Part, and Memorandum Opinion filed May 11, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00063-CR

---

### LANG YEN NGUYEN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 331st District Court
Travis County, Texas
Trial Court Cause No. D-1-DC-15-500273**

---

### MEMORANDUM OPINION[1]

For conduct involving his niece and adopted daughter, K.N.,[2] a jury found

---

[1] The Supreme Court of Texas ordered this case (No. 03-17-00859-CR) transferred from the Court of Appeals for the Third Court of Texas to this court. Misc. Docket No. 18-9006 (Tex. Jan. 9, 2018); *see* Tex. Gov't Code Ann. §§ 73.001, .002. Because of the transfer, we decide the case in accordance with the precedent of the transferor court under principles of stare decisis if our decision otherwise would have been inconsistent with the transferor court's precedent. *See* Tex. R. App. 41.3.

[2] We use the complainant's initials because she was a minor during the relevant time

appellant guilty on five counts: one count of continuous sexual abuse of a young child on or about July 5, 2010 through July 4, 2013 (count I), *see* Tex. Penal Code Ann. § 21.02; two counts of sexual assault of a child on or about September 10, 2014 (counts II and III), *see* Tex. Penal Code Ann. § 22.011(a)(2); and two counts of aggravated sexual assault of a child on or about January 1, 2011 (counts VIII and IX), *see* Tex. Penal Code Ann. § 22.021. The trial court assessed punishment at imprisonment for 45 years for each of counts I, VIII, and IX, and 20 years for each of counts II and III, with all sentences to run concurrently. *See* Tex. Penal Code Ann. §§ 12.32(a), .33(a), 21.02(h), 22.011(f), 22.021(e).

Appellant brings six issues on appeal.[3] Concluding the punishments for counts I, VIII, and IX constitute multiple punishments for the same conduct in violation of Penal Code section 21.02(e), we vacate the judgments of conviction on counts VIII and IX and dismiss those counts of the indictment with prejudice. Tex. R. App. P. 43.2(e). We affirm the remainder of the trial court's judgments as challenged on appeal.

## I.    BACKGROUND

Appellant is the uncle and adoptive father of complainant K.N. In September 2014, K.N., then 15-years old and a high-school sophomore, met with school counselor Tanesha Bazemore. She told Bazemore that appellant "had been raping

_____

period. *See* Tex. R. App. P. 9.10(a)(3), (b).

[3] Appellant filed a notice of appeal for this case, which includes five judgments of conviction on five counts. Appellant's original appellate lawyer, who died during the pendency of this appeal, submitted issues 1 and 2 challenging appellant's conviction for continuous sexual abuse of a young child in count I, but did not brief the remaining counts of sexual assault of a child (counts II and III) or aggravated sexual assault of a child (counts VIII and IX), or submit *Anders* briefing on those counts. *See Anders v. California*, 386 U.S. 738 (1967). We abated this appeal for additional briefing, *Anders* or otherwise, on the remaining counts, or for appellant to move to dismiss the appeals of those counts. *See* Tex. R. App. P. 42.2(a). After the trial court appointed new appellate counsel, this court received briefing challenging the trial court's judgments on counts II, III, VIII, and IX in appellant's issues 3 to 6.

her" since she was in the fifth or sixth grade. Bazemore asked school social worker Ana Bowie to join the meeting. Bowie testified that K.N. told her that appellant "would come into her room and put his penis inside of her." The most recent incident had been the night before, but it had been happening "since she was young, like ten years old."

Nurse Moira Foley, a sexual-assault nurse examiner (SANE), conducted K.N.'s SANE exam. Foley testified that K.N. told her that appellant had been "putting himself inside me, his penis" since K.N. "was 10 or 11." According to K.N., "[i]t would happen two or three times a week."

Caitlin Lott, a forensic scientist with the Department of Public Safety crime lab in Austin, testified that samples taken during the SANE exam contained sperm. The sperm was found in swab samples taken from both K.N.s vagina and cervix. Testing of the sperm samples from the vaginal and cervical swabs showed the sperm was consistent with the DNA profile of appellant, and "not consistent with any of those profiles already seen within the U.S. population."

Before trial, K.N., in discussions with Child Protective Services (CPS) caseworker Rhonda Freeman, recanted her allegations against appellant. At trial, as expected by the parties, K.N. again recanted her allegations, admitting that she made reports that appellant "had raped" her, but stating that she had been lying because she was mad at appellant for being strict about her grades. When asked how appellant's semen could have reached her cervix, K.N. speculated it might have been from a shared towel, but otherwise had "no idea" how his semen, which she did not insert into her vagina, could have gotten to her cervix. SANE nurse Foley testified that it would be "really difficult" for sperm to travel from a towel to the cervix, as the towel would have to be inserted several inches into the body, and would be unlikely to deposit semen there even if so inserted. Forensic scientist Lott

likewise testified that it would be "unlikely" for sperm on a towel to reach the cervix.

CPS caseworker Freeman, testifying after K.N., confirmed that K.N. had initially said that appellant had sex with her "every night" from the time she was 10 until her report at age 15. In May 2015, however, approximately eight months after her initial report, K.N. told Freeman she had lied about her allegations against appellant, saying that she was mad because appellant would not let her hang out with her friends or have a boyfriend.

## II.   ANALYSIS

### A.   Continuous sexual abuse (count I)

In issues 1 and 2, appellant argues that the trial court erred with regard to count I (continuous sexual abuse of a child) in instructing the jury it could convict appellant on a less than unanimous verdict in accordance with Penal Code section 21.02(d) because Penal Code section 21.02(d) is unconstitutional.[4] Because appellant addresses issues 1 and 2 together, we do as well.

Under section 21.02, a person commits an offense if, during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

---

[4] Appellant did not object to the charge at trial. Appellant filed a motion for new trial setting forth the constitutional challenge he raises on appeal. The motion was overruled by operation of law. *See* Tex. R. App. P. 21.8(a), (c). We assume without deciding that appellant preserved his constitutional challenge as to count I because even if appellant failed to preserve the issue independently, appellant's issue asserting jury charge error is based on his constitutional challenge, and we review unpreserved jury-charge error for egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (unpreserved jury-charge error that causes egregious harm is reversible error). We note that compliance with Government Code section 402.010 was not raised in the trial court or argued on appeal. *See* Tex. Gov't Code Ann. § 402.010.

Tex. Penal Code Ann. § 21.02(b). The statute defines "act of sexual abuse" as including sexual assault under Penal Code section 22.011 and aggravated sexual assault under Penal Code section 22.021. Tex. Penal Code Ann. § 21.02(c). The legislature expressly provided that:

> If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Tex. Penal Code Ann. § 21.02(d).

Appellant challenges his conviction for continuous sexual abuse of a young child because the jury charge instructed jurors, in accordance with Penal Code section 21.02(d), that they were not required to agree unanimously on the specific acts of sexual abuse supporting the offense. Appellant asserts section 21.02(d) is unconstitutional.

Appellant acknowledges that this court and others, including the Third Court of Appeals, have repeatedly rejected the constitutional challenges to the continuous-sexual-abuse statute that appellant raises here. *See McMillian v. State*, 388 S.W.3d 866, 871–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Martin v. State*, 335 S.W.3d 867, 871–73 (Tex. App.—Austin 2010, pet. ref'd); *Jacobsen v. State*, 325 S.W.3d 733, 736–39 (Tex. App.—Austin 2010, no pet.); *see also Navarro v. State*, 535 S.W.3d 162, 165–66 (Tex. App.—Waco 2017, pet. ref'd); *Pollock v. State*, 405 S.W.3d 396, 404–05 (Tex. App.—Fort Worth 2013, no pet.); *Fulmer v. State*, 401 S.W.3d 305, 310–13 (Tex. App.—San Antonio 2013, pet. ref'd); *Kennedy v. State*, 385 S.W.3d 729, 731–32 (Tex. App.—Amarillo 2012, pet. ref'd); *Casey v. State*, 349 S.W.3d 825, 827–30 (Tex. App.—El Paso 2011,

pet. ref'd); *Render v. State*, 316 S.W.3d 846, 855–58 (Tex. App.—Dallas 2010, pet. ref'd).

Nonetheless, appellant contends this authority provides incomplete analysis of the constitutional question he raises. Appellant asserts his arguments are supported by a recent court of criminal appeals case, *O'Brien v. State*, 544 S.W.3d 376 (Tex. Crim. App. 2018). Appellant also asserts that the courts rejecting his argument have incompletely examined the United States Supreme Court's analysis in *Richardson v. United States*, 526 U.S. 813 (1999).

*O'Brien v. State*

The *O'Brien* court stated well-established law on jury unanimity. 544 S.W.3d at 382. A jury in Texas must reach a unanimous verdict. *Id.* The jurors must agree that the defendant committed one specific crime, but not that the defendant committed the crime in one specific way or even with one specific act. *Id.* The jurors must agree on each essential element of the crime. *Id.* But the requirement of unanimity is not violated when the jury charge "presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense." *Id.*

We decide a jury unanimity challenge by answering two questions. *Id.* First, we look to the language of the penal offense to determine whether the legislature has created a single offense with multiple or alternate modes of commission. *Id.* If acts supporting an offense are manner and means, jury unanimity is not required; if they are elements, jury unanimity is required. *Id.* at 384. Second, we consider whether jury unanimity is nonetheless required as a matter of due process "because the alternate means are so disparate as to become two separate offenses." *Id.* at 383.

In this case, the plain language of the statute answers the first question. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (discussing application of plain-meaning rule). Penal Code 21.02(d) specifically states the jury is "not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." Tex. Penal Code Ann. § 21.02(d). This leaves no doubt about the legislature's intention. The plain language makes clear that the jury is not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.

In *O'Brien*, the court of criminal appeals addressed the unanimity requirements for the offense of engaging in organized criminal activity. 544 S.W.3d at 379. Because the statute for that offense did not expressly state what the jury must (or must not) be unanimous about, the *O'Brien* court conducted a statutory analysis seeking to ascertain the gravamen of the offense. *See id.* at 383–93 ("We determine what the jury must be unanimous about by conducting a statutory analysis that seeks to ascertain the focus or the gravamen of the offense."). Appellant urges this court to conduct a similar statutory analysis, but we need not track the complete analysis of the *O'Brien* court. When "the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Id.* at 384 (quotation omitted). Because the plain language of the statute under review in this case clearly states unanimity is not required on specific acts of sexual abuse, we are unpersuaded that *O'Brien* requires us to depart from well-established precedent. *See McMillian*, 388 S.W.3d at 871–73; *Jacobsen v. State*, 325 S.W.3d at 736–39; *see also Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014) ("The statutory language reflects that the

7

Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts.").

*Richardson v. United States*

Appellant's arguments concerning *Richardson* are also unpersuasive. The *Richardson* Court addressed the unanimity requirements for the federal offense of engaging in a continuing criminal enterprise. 526 U.S. at 815–16. According to appellant, the *Richardson* Court focused on three main points: due process, the difference between "manner and means" (which do not require unanimity) and elements (which require unanimity), and "the need to adapt statutes to specific evidentiary needs." Appellant asserts the *Jacobsen* court unfairly distinguished the *Richardson* opinion as a statutory-construction opinion, not a due-process opinion. Appellant argues the *Richardson* Court determined the predicate offenses for the statute it considered were elements rather than manner and means "by examining due process and employing statutory construction in that context."

While the *Richardson* Court did consider due process, its primary analysis focused on statutory construction because the federal statute for engaging in a continuing criminal enterprise "[did] not explicitly tell [the Court] whether the individual violation [was] an element or a means." 526 U.S. at 818. We need not employ the same statutory construction tools the *Richardson* Court employed because in this case it is clear that the legislature did not intend jury unanimity.

Appellant next suggests that the legislature could not constitutionally classify prior violations as "manner and means." We construe this as an argument that despite the legislature's intent, jury unanimity is nonetheless required as a matter of due process because, as the *Richardson* Court concluded, the "statute's

breadth [] argues against treating each individual violation as a means." 526 U.S. at 819. Appellant acknowledges that Texas courts have distinguished *Richardson* in this regard because the continuing-criminal-enterprise statute encompassed an extremely broad range of underlying violations. Using the *McMillian* court's analysis as an example, appellant asserts that Texas courts have not adequately explained "why the fact that the prior violations are conceptually similar renders them merely evidentiary rather than elements upon which unanimity is required." This argument conflates the two steps we must undertake when considering jury unanimity. *See O'Brien*, 544 S.W.3d at 382–83.

As the *McMillian* court explained, and we repeat, with respect to Penal Code 21.02, we conclude the specific acts of sexual abuse are manner and means rather than elements because the legislature expressly stated the jury need not unanimously agree on specific sexual acts. *McMillian*, 388 S.W.3d at 871–73. The only remaining question is whether jury unanimity is nonetheless required as a matter of due process "because the alternate means are so disparate as to become two separate offenses." *See O'Brien*, 544 S.W.3d at 383; *see also Jacobsen*, 325 S.W.3d at 737. The *O'Brien* court explained that the relevant due-process concern is whether a statute's definition "risks serious unfairness and lacks support in history or tradition," and "we answer this due process question by determining whether the acts or omissions that combine to establish an offense are basically morally and conceptually equivalent." *O'Brien*, 544 S.W.3d at 383–84 (quotation omitted). The *McMillian* court explained, and we agree, that the alternate acts of sexual abuse listed under section 21.02(b) are morally equivalent and conceptually similar because they are all felonies involving the actual or intended sexual abuse of a young child. 388 S.W.3d at 872–73. The legislature has not violated due process by treating these alternate acts as manner and means under section 21.02.

*Id.*; *Jacobsen*, 325 S.W.3d at 737–39.

Finally, appellant argues the *Richardson* Court "specifically rejected the argument that difficulty in proof of particular violations justified viewing those violations as mere manners and means." But *Richardson*'s analysis on this point pertained to the criminal-enterprise statute it was reviewing, not the type of statute we consider. *See* 526 U.S. at 820–24. The *Richardson* Court explicitly mentioned state statutes similar to Penal Code 21.02, which permit jury disagreement about incidents underlying a continuous course of conduct in the sexual abuse of a minor, and noted these statutes "may well respond to special difficulties of proving individual underlying criminal acts" and "their special subject matter indicates they represent an exception." *Id.* at 821. The Court also distinguished these types of statutes by noting that it has not held the Constitution imposes a jury-unanimity requirement in state cases. *Id.* Indeed, the Fourteenth Amendment has not been interpreted to extend the Sixth Amendment's jury-unanimity requirement to state prosecutions. *See McDonald v. City of Chicago*, 561 U.S. 742, 766 n.14, 867–68 (2010) ("The Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials."); *Schad v. Arizona*, 501 U.S. 624, 630, 634 n.5 (1991) ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict."); *see also Romero v. State*, 396 S.W.3d 136, 147 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

Appellant's arguments do not persuade us to depart from precedent or differ from the persuasive decisions of other courts of appeals. Therefore, we again hold Penal Code section 21.02 is not unconstitutional. The trial court did not err by instructing the jury in accordance with Penal Code section 21.02.

We overrule appellant's issues 1 and 2.

10

## B.     Aggravated sexual assault (counts VIII and IX)

In his issue 3, appellant argues, and the State agrees, that appellant's convictions for aggravated sexual assault under counts VIII and IX should be vacated because these alleged offenses occurred during the same time period encompassed by the offense of continuous sexual abuse in count I. Penal Code section 21.02(e) disallows dual convictions for continuous sexual abuse and a predicate "act of sexual abuse" listed in subsection (c) occurring during the same time period.[5] Tex. Penal Code Ann. § 21.02(c), (e); *see Price*, 434 S.W.3d at 606 ("[T]he Legislature clearly intended to disallow dual convictions for the offense of continuous sexual abuse and for offenses enumerated as 'acts of sexual abuse' when based on conduct against the same child during the same period of time."). Accordingly, a defendant may not be convicted of both continuous sexual abuse and aggravated sexual assault "unless the latter offense occurred outside the period of time in which the continuous-sexual-abuse offense was committed." *Price*, 434 S.W.3d at 606; *see also* Tex. Penal Code Ann. § 21.02(c)(4) (listing "aggravated sexual assault under Section 22.021" as "act of sexual abuse").

Here, the jury found appellant guilty of continuous sexual abuse of a child during the period beginning on or about July 5, 2010 and continuing through July

---

[5] This analysis has its roots in the Fifth Amendment guarantee against double jeopardy, which protects "against multiple punishments for the same offense." U.S. Const. amend. V, XIV. A multiple-punishments claim can arise when a person is punished for (1) the same primary offense twice, "once for the basic conduct, and a second time for that same conduct plus more," or (2) the same criminal act twice under two distinct statutes "when the legislature intended the conduct to be punished only once[.]" *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The question of whether an individual may be punished for the same criminal act under two distinct statutes is a matter of legislative intent. *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008). However, the question of whether multiple punishments violate the Double Jeopardy Clause is distinct from whether they violate Penal Code section 21.02(e), and the statutory analysis is the only question we address herein. *See Allen v. State*, No. PD-0203-19, 2021 WL 1556096, at *5 (Tex. Crim. App. Apr. 21, 2021) (deciding multiple-punishments issue on section 21.02(e) grounds and declining to address double-jeopardy arguments).

4, 2013, as alleged in count I. The jury also found appellant guilty of two counts of aggravated sexual assault on January 1, 2011, as alleged in counts VIII and IX. Appellant argues that this constitutes multiple punishments for the same offense as prohibited by section 21.02(e) because the offenses charged in counts VIII and IX occurred during the time period covered by the continuous-sexual-abuse charge in count I. *See* Tex. Penal Code Ann. § 21.02(c), (e).

The court of criminal appeals recently clarified that, in determining whether convictions are impermissible multiple punishments under section 21.02(e), "[t]he date an offense was committed cannot be determined by looking at an indictment, it must be determined by looking at the evidence presented at trial." *Allen v. State*, No. PD-0203-19, 2021 WL 1556096, at *5 (Tex. Crim. App. Apr. 21, 2021). The court elaborated:

> We hold that in determining whether a defendant may be convicted for a continuous abuse offense and an offense listed in § 21.02(c) in the same criminal action and against the same victim, the proper consideration is whether the evidence shows that the § 21.02(c) offense occurred outside of the period that the continuous abuse offense was committed. The determination does not consider whether the § 21.02(c) offense occurred outside the time period *alleged* in the indictment for the continuous abuse offense.

*Id.* at *4 (emphasis added). Here, the evidence at trial shows that, for purposes of the continuous-sexual-abuse statute, appellant sexually abused K.N. multiple times per week starting when K.N. was 10 or 11 years of age up to (and past) her fourteenth birthday, at which time the continuous-sexual-abuse statute no longer applied. *See* Tex. Penal Code Ann. § 21.02(b)(2) (statute applies to offenses committed against "a child younger than 14 years of age"). The evidence supporting the State's allegations of aggravated sexual assault in counts VIII and IX occurred during this same time period. There was no evidence that any sexual

assault occurred before the alleged continuous sexual abuse began, and the only aggravating factor for which the state offered evidence was that K.N. was younger than 14 years of age at the time of the alleged aggravated sexual assaults.[6] *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). Accordingly, the evidence shows that the alleged offenses of aggravated sexual assault occurred after appellant began continuously abusing K.N. and before K.N.'s fourteenth birthday. Because this is the same time period during which the continuous-sexual-abuse offense was committed, the convictions for continuous sexual abuse in count I and aggravated sexual assault in counts VIII and IX are impermissible multiple punishments for the same offense in violation of Penal Code 21.02(e). Tex. Penal Code Ann. § 21.02(e); *see Allen*, 2021 WL 1556096, at *4–5.

In general, when a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008). The "most serious" offense is the offense of conviction for which the greatest sentence was assessed. *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006). Here, appellant was sentenced to imprisonment for 45 years for each of his convictions for continuous sexual abuse of a young child (count I) and aggravated sexual assault of a child (counts VIII and IX). The Third Court of

---

[6] The State's closing argument confirms that the State based its allegations of aggravated sexual assault on the same evidence supporting its allegation of continuous sexual abuse:

> If you find [appellant] guilty of the continuous, which I had here, you don't need to consider the aggravated sexual assault. Okay? Because this just means that you believe that the aggravated sexual assault . . . happened [when K.N. was] 13 years or younger, just one instance. But you have two counts in the charge to consider. So if you find [appellant] guilty of continuous, you do not have to consider the aggravated sexual assault of a child. If you don't believe that this was continual abuse, then you can start proceeding on the aggravated sexual assault of a child, where you need to determine whether or not this happened when [K.N.] was 13 years old or younger.

Appeals previously addressed such a circumstance under section 21.02(e) and concluded that the appropriate remedy is to vacate the convictions for aggravated sexual assault, as these "are lesser-included offenses of the greater offense of continuous sexual abuse." *Weber v. State*, 536 S.W.3d 31, 37 (Tex. App.—Austin 2017, pet. ref'd) (citing *Price*, 434 S.W.3d at 609).

Accordingly, we sustain appellant's issue 3.

## C.     Sexual assault (counts II and III)

### 1.     Charge error

In issue 4, appellant challenges his convictions for sexual assault in counts II and III[7] on the grounds that the trial court's charge did not instruct the jury that its verdict as to these counts must be unanimous.[8]

Regarding continuous sexual abuse, the charge instructed the jury regarding unanimity as follows:

> With regard to the offense of Continuous Sexual Abuse of a Young Child you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant, LANG YEN NGUYEN, or the exact date when those acts were committed. You are required to agree unanimously that the defendant, LANG YEN NGUYEN, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Later in the charge there is no equivalent instruction explaining that the jury must agree unanimously to the specific acts of sexual assault and aggravated sexual assault committed by appellant. Rather, the next discussion in the charge of

---

[7] Because appellant's issues 4, 5, and 6 do not challenge count I, and because we have already determined that appellant's convictions on counts VIII and IX must be vacated, we confine our analysis of issues 4, 5, and 6 to counts II and III. *See* Tex. R. App. P. 47.1.

[8] This challenge is distinct from appellant's charge-error arguments as to to count I, in which appellant argued that the unconstitutionality of the continuous-sexual-abuse statute caused charge error.

unanimity is a cursory mention in the last paragraph, which states:

> After the reading of the charge and argument of counsel, you will retire and select one of your members as your foreperson. It is his or her duty to preside at your deliberations and to vote with you in arriving at your verdicts. Your verdicts must be unanimous, and after you have arrived at your verdicts, you may use the forms attached hereto by having your foreperson sign his or her name to the forms in conformance with your verdict.

We agree with appellant that charge error exists regarding unanimity requirements. Non-unanimity may result "when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio v. State*, 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). A "standard, perfunctory unanimity instruction" at the end of each charge does not rectify the error. *Id.* at 774. In this case, there are allegations that appellant abused K.N. many times over a period of years. While the case involves two different standards for unanimity for the alleged acts, one for the continuous-sexual-abuse count and a different, more stringent standard for the sexual-assault counts, the trial court's charge makes little attempt to explain or reconcile these competing standards. Under these circumstances, we conclude the trial court's charge did not adequately instruct the jury as to the unanimity requirements peculiar to this case. *See id.*[9]

As noted above, appellant did not object to this charge error in the trial court, so we review this unpreserved charge error for egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm must be based on a finding of actual, rather than theoretical, harm. *Cosio*, 353 S.W.3d at 777. For actual harm to be established, the charge error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a

---

[9] The State does not argue that the trial court did not err in this regard.

defensive theory. *Id.* Under the egregious-harm standard, we weigh four factors: (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Id.*

As above, the charge provides little guidance regarding the varying unanimity requirements among the offenses charged in this case. This factor weighs in favor of a finding of egregious harm. The State exacerbated these issues in its closing, during which the State provided, at best, confusing summations of the unanimity requirements that muddled the competing unanimity requirements and suggested that the jury did not have to be unanimous as to the sexual-assault counts.[10] This factor likewise weighs in favor of egregious harm.

---

[10] In its initial closing, the State argued:

> The first thing I'll discuss is sexual assault of a child. That means on or about the 10th day of September 2014, in Travis County, the defendant, Lang Nguyen, intentionally and knowingly penetrated the sexual organ of [K.N.], or also contacted the sexual organ of [K.N.], and that [K.N.] was a child younger than 17 years of age. Okay. This is the charge where if you believe that on September 10th of 2014, where we have DNA evidence, she was actually assaulted the night before the outcry, that's guilty.
>
> Let me sum it up a little bit better for you. This is the question you need to ask yourself: Did the defendant sexually abuse the victim somewhere between the ages of 14 and 16? If you believe the night before the Pflugerville High School outcry, when she was 15—if you believe yes, it happened then—okay? So that's what that charge is.
>
> And I need to also clarify. There is a part in your charge where it says that you don't always have to agree on the manner of which the sexual assault happened. And let me clear that up for you. You can penetrate vaginally with a penis, but you can also make contact. If for some reason six of you believe that he made contact but didn't penetrate and the other six believe that vaginal penetration actually did occur, you still can find him guilty. So let me just clear that up for you.

Later, the State attempted to clarify:

> There's a couple of things that I just wanted to go back to to tell you about the charge. When my co-counsel, Jessica Wolfe, was talking to you about six of

We conclude, however, that the particular evidence in this case precludes a determination that the trial court's charge error egregiously harmed appellant. *See Jourdan v. State*, 428 S.W.3d 86, 98 (Tex. Crim. App. 2014) ("It is also relevant to the egregious harm analysis to inquire about the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case."). The court of criminal appeals has repeatedly emphasized that there is little risk of a non-unanimous verdict in cases such as this, where one side argues a theory of repeated sexual abuse, and the other side denies any abuse occurred. In *Cosio*, the court of criminal appeals explained:

> Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because the C.P. was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate C.P.'s testimony. His defense was essentially of the same character and strength across the board. The jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt. Had the jury believed otherwise, they would have acquitted Cosio on all counts. On this record, therefore, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents. It is thus highly likely that the jury's verdicts (on the three remaining counts not set aside on sufficiency grounds) were, in fact, unanimous. Accordingly, actual harm has not been shown, and we cannot say that Cosio was denied a fair and impartial trial.

---

you can believe that there was penetration, while six of you can believe that there was—the sexual organ contacted the other sexual organ, that goes with the continuous charge. I just wanted to clear that up.

So when you're determining two or more acts on the aggravated sexual assault charge, if six of you believe that he penetrated her vagina with his penis and six of you believe that he just contacted her vagina with his penis, within 30 or more days of a period of time, those are—while those both reach the aggravated sexual assault charges, you can still convict on the continuous. You don't all 12 have to unanimously agree on whether it was penetration or contact. And that is more illustrated and written out in the charge. I know that can sometimes be confusing. I just wanted to go back and clear that up.

353 S.W.3d at 777–78 (footnote omitted); *see also Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015) (no egregious harm from charge error when jury "clearly credited" complaining witness's story and did not believe defendant's categorical denial by convicting on six of seven counts); *Taylor v. State*, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) (no egregious harm from charge error; "The defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury believed that Appellant sexually assaulted the victim before he turned 17 years old but not after. In this case, the jury either believed Appellant or believed the victim.").

Here, evidence of K.N.'s outcry and the SANE exam supported the State's theory that appellant had sexually assaulted K.N. the night before her outcry and had done so in a similar manner multiple times per week from the time she was 10- or 11-years old until her outcry at age 15. By its verdicts, the jury necessarily credited this theory of the case and rejected appellant's defensive theory that none of the abuse occurred. Under the reasoning of *Cosio* and its progeny, we conclude that, on this record, there was not sufficient risk of non-unanimity for appellant to meet the exceedingly high standard to show egregious harm.[11] 353 S.W.3d at 777– 78; *see Jourdan*, 428 S.W.3d at 98 (no egregious harm even when charge was erroneous and State incorrectly argued that unanimity was not required because, on facts of case, likelihood of non-unanimity was "exceedingly remote").

We overrule issue 4.

## 2. Impeachment

In issue 5, appellant raises several arguments concerning improper

---

[11] The record reveals no "other relevant information that may require consideration," such as "whether the jury rejected one of multiple counts or sent requests for clarification during deliberations." *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

impeachment. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

### a. Prior inconsistent statements

Appellant first argues that the trial court impermissibly allowed the State to call K.N. to testify because the primary purpose of her testimony was to present to the jury impeachment evidence that would otherwise be inadmissible, specifically, her later-recanted allegations that appellant "had raped" her. The credibility of a witness may be attacked by any party, including the party calling the witness. Tex. R. Evid. 607. One permissible method of attacking the credibility of a witness is through impeachment by prior inconsistent statements. *See* Tex. R. Evid. 613(a). However, impeachment by prior inconsistent statements may not be permitted when employed as a mere subterfuge to place before the jury evidence that is otherwise inadmissible. *See Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); *Miranda v. State*, 813 S.W.2d 724, 734 (Tex. App.—San Antonio 1991, pet. ref'd) (Onion, J.).

To determine whether the impeachment was for an improper purpose, courts should engage in a Rule 403 balancing analysis. *Hughes*, 4 S.W.3d at 4–5; *see* Tex. R. Evid. 403. Specifically, courts should balance the probative value of admitting the prior inconsistent statement for its legitimate impeachment purpose against the danger of unfair prejudice created by the jury misusing the statement for substantive purposes. *Miranda*, 813 S.W.2d at 735. Factors to consider in the analysis include whether the State was surprised by the witness's recantation and

whether the State was able to elicit any favorable testimony from the witness. *See Hughes*, 4 S.W.3d at 7. Courts also consider whether the impeachment evidence had been admitted from another source. *See Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.).

The record indicates that the State was aware that K.N. would recant, which weighs against admitting the evidence. However, the State was able to elicit favorable testimony from K.N. beyond impeachment, including information concerning her relationship with appellant and her testimony that she did not know how appellant's semen could have gotten into her cervix. In addition, the jury had already heard unobjected-to testimony concerning K.N.'s allegations against appellant from social worker Bowie and SANE nurse Foley. *See id.* (concluding impeachment evidence need not be excluded under *Hughes* partly because "there were sources of the critical evidence other than the hearsay testimony").

We conclude that the trial court's decision to allow K.N.'s testimony falls within the zone of reasonable disagreement, which is the limit of our review. *See McDonald*, 179 S.W.3d at 576.

### b. Lack of foundation

Appellant next argues the State's impeachment was improper due to a lack of foundation because the State did not first ask K.N. about her recantation before impeaching her with her inconsistent statements. Appellant, however, did not object to K.N.'s testimony about her allegation against appellant on the grounds of lack of foundation for impeachment. Accordingly, this argument was not preserved for our review. Tex. R. Evid. 103(a)(1)(A); Tex. R. App. P. 33.1(a)(1)(B).

### c. Extrinsic evidence

Appellant next argues the trial court erred by admitting testimony of school

counselor Bazemore and CPS caseworker Freeman impeaching K.N. because K.N. admitted to making the allegations against appellant that she later recanted. *See* Tex. R. Evid. 613(a)(4) ("Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement."). Appellant did not specifically challenge Bazemore's testimony on the grounds of improper impeachment. *See* Tex. R. Evid. 103(a)(1)(A); Tex. R. App. P. 33.1(a)(1)(B). While appellant made a "hearsay" objection to Bazemore's testimony on the page of the record cited in his brief, it is not apparent from the context that the basis of this objection was that Bazemore's testimony was hearsay because it was an improper impeachment of K.N., who had not yet testified. *See* Tex. R. App. P. 33.1(a)(1)(A). Accordingly, we conclude that appellant did not preserve his challenge to Bazemore's testimony on the grounds of improper impeachment. *See* *Miranda*, 813 S.W.2d at 737 (general "hearsay" objections did not preserve issue of improper impeachment).[12]

We likewise conclude that appellant did not preserve this issue with regard to CPS caseworker Freeman. While appellant objected to Freeman's testimony on grounds of hearsay and best evidence, and requested and received a limiting instruction from the trial court concerning the proper use of impeachment evidence, appellant did not object that Freeman's testimony constituted improper extrinsic evidence of impeachment. *See* Tex. R. Evid. 103(a)(1)(A); Tex. R. App. P. 33.1(a)(1); *Miranda*, 813 S.W.2d at 737.

We overrule issue 5.

---

[12] Appellant also argues in passing that Bazemore's testimony was inadmissible because "the State endeavored to use Bazemore as an improper outcry witness contravening Code of Criminal Procedure 38.072." As above, we conclude that appellant's generic "hearsay" objection did not preserve this complaint. *See Miranda*, 813 S.W.2d at 737.

### 3.     Expert testimony

In issue 6, appellant argues the trial court erred in admitting certain expert testimony. Appellant first argues that the trial court improperly allowed CPS caseworker Freeman to testify about K.N.'s truthfulness in violation of Texas Rule of Evidence 702. Rule 702 concerns the qualifications of an expert witness. *See* Tex. R. Evid. 702. Freeman, however, was not presented as an expert witness, nor was her testimony challenged on Rule 702 grounds. We conclude that appellant's argument regarding Freeman's "expert" testimony presents nothing for our review. *See* Tex. R. Evid. 103(a)(1)(A); Tex. R. App. P. 33.1(a)(1)(B).

Appellant next argues that the following hypothetical questions asked to State's expert Dr. William Carter, a psychologist, were inadmissible:

> [THE STATE]. And, Dr. Carter, if an adult questions a child about what happened—an adult that doesn't support the child continues to question the child about the allegations and about what happened and sees that the child is not answering any questions and is remaining silent and the adult continues to ask questions, can that have an impact on the child?
>
> A. Who is the adult? What is that person's identity?
>
> Q. A mother figure.
>
> A. Okay. So if it's a person who—
>
> [DEFENSE COUNSEL]: Your Honor, I object to this line of questioning. She's trying to plant these notions into the jurors' minds of evidence that has not been presented to—to them.
>
> THE COURT: So what's the objection?
>
> [DEFENSE COUNSEL]: Just the line of questioning. I believe she's beginning to testify as to speculative evidence. There's been no evidence of any mother that's ever said, "Child, don't tell this—don't say this about your father."
>
> THE COURT: Restate your hypothetical, please.
>
> [THE STATE]: Yes, Your Honor.

Q. (By [the State]) Hypothetically speaking, if there is a mother figure who continues to ask the child, the victim, about what happened and the child is not answering or is remaining silent and the mother continues to ask the question repeatedly, what kind of effect would it have on that child?

[DEFENSE COUNSEL]: In addition, Your Honor, it's a compound question. There's lots of questions in there.

THE COURT: Overruled.

Q. (By [the State]) You can go ahead and answer the question, Dr. Carter.

A. May I elaborate on it?

Q. Yes.

A. Okay. You've got a lot going on there. When you look at communication between and among people, you have words, and then you have the underlying dynamics behind all the words, and so we need to understand both of those. If an adult, say a mother figure, is pressuring a child regarding a statement she made, the child is going to interpret it according to her point of view.

An expert witness's testimony may consist of answers to hypothetical questions, provided the questions are sufficiently tied to the facts of the case to meet the relevance requirement. *Tillman v. State*, 354 S.W.3d 425, 438–41 (Tex. Crim. App. 2011). Although the hypothetical questions must be based on facts in evidence, there is no requirement that these facts be proved beyond a reasonable doubt. *McBride v. State*, 862 S.W.2d 600, 610 (Tex. Crim. App. 1993). Indeed, in propounding the question to the witness, counsel may assume the facts in accordance with counsel's theory of the case. *Id.* at 610 n.20.

Appellant argues the above line of questioning was inadmissible because there was no evidence in the record that K.N. had been "continuously questioned by a mother figure or any adult" or "pressured regarding her statement." K.N.'s mother, however, testifying before Carter, stated that she had been "critical" of

23

K.N. for her accusations against appellant. When asked if she had listened to K.N.'s side of the story, K.N.'s mother testified, "I ask[ed] her, but she did not respond." K.N.'s mother also testified that she had told K.N., "You are wrong. You are a liar. You need to stop this." The trial court could have concluded from this testimony that the State's hypothetical questions to Carter about a child being "questioned" or "pressured" by a mother figure were sufficiently supported by the record to be admissible. *See Tillman*, 354 S.W.3d at 438–41.

We overrule issue 6.

## III. CONCLUSION

Having sustained issue 3, we vacate the trial court's judgments of conviction for aggravated sexual assault as alleged in counts VIII and IX and dismiss those counts of the indictment with prejudice. Tex. R. App. P. 43.2(e). We affirm the remainder of the trial court's judgments as challenged on appeal.

/s/     Charles A. Spain
       Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).